GrANTT, J.
— This suit was instituted in the circuit court of the city of St. Louis, October 13, 1902, by Chicago Herald Company, an Illinois corporation. The petition alleged that on September 23, 1902, the plaintiff delivered to N. D. Thompson three promissory notes dated October 1, 1902, payable January 2, 1903, aggregating $10,967.40, all of said notes being made by plaintiff to the order of N. D. Thompson Publishing Company. That said notes were delivered to Thompson to be discounted by the publishing company and proceeds returned to plaintiff for the purpose of paying certain other notes due October 1, 1902, aggregating $10,800. That the publishing company failed to dis *579 count the notes and delivered, the same to defendant, who represented that he would have the same discounted and return the money to Thompson to he forwarded to the plaintiff. That defendant did have the notes discounted and received the proceeds and wrongfully converted the same to his own use. That plaintiff demanded of defendant the delivery of said money on October 10,1902. Plaintiff asked judgment for the sum of $10,-967.40, with interest from October 1, 1902.
The second amended answer upon which the case was tried admits that plaintiff executed the notes to the publishing company as alleged, and that the same were delivered by the publishing company to defendant, and denied all the other allegations in the petition. The answer further stated that the notes were negotiable and payable to the order of the publishing company, and that the publishing company indorsed the same béfore maturity and delivered the same to defendant, to be indorsed by him and sold, and that he did indorse and sell said notes, and credited the proceeds to an indebtedness of the publishing company to him without notice of any interest of. plaintiff therein.
The answer further set up in bar to the action that the publishing company had settled with plaintiff in full for any and all claims which they might have either to said notes or their proceeds.
The answer, further states that since the time , of said settlement this action has been prosecuted in the name of plaintiff, but solely and entirely by the publishing company, and for the use and benefit of the publishing company. That in 1899 a contract was entered into between the publishing company and defendant for the publication of a book called “Our Island Possessions,” under which contract the profits arising from the sales of said publication were to be divided between defendant and said publishing company, in proportion of one-third to defendant and two-thirds to the publishing company. That continually since the date of *580 said contract the publishing company had been engaged in the sale of said publication, and had realized therefrom, after deducting the cost thereof, profits amounting to the sum of $150,000, to one-third of which defendant was entitled and which amount was due and owing from the publishing company. That the publishing company was insolvent and that defendant could not realize from it the money so due him by the ordinary process of law. The answer further prayed that an accounting might be had to determine the amount due defendant on account of said profit-sharing contract. The answer further prayed that the indebtedness from the publishing company to. defendant on account of said contract should be taken and treated as an offset against the claim for the proceeds of the notes sued for in this case.
The reply to this answer was a general denial.
The case was heard on March 11, 1903, before the court. At the hearing the plaintiff produced as a witness A. A. McCormick, secretary and general manager of the Chicago Herald Company, who testified that the Chicago Herald Company, had been buying of the publishing company large quantities of the publication known as “Our Island Possessions.” That the books were' purchased on twelve months’ time, the first six months to be without interest and the next six months with interest. That from time to time, as purchases were made, six months ’ notes were to be given, without interest, and as the maturity of these notes approached plaintiff was to deliver to the publishing company other notes of like amount to be discounted by them and the proceeds returned in time to be applied to the payment of the notes first maturing. That in accordance with this arrangement the plaintiff had given certain notes to the publishing company for book purchases in April, 1902, these notes aggregating $10,800. That the notes in controversy were delivered to Thompson in September, to be by the publishing company discounted and the *581 proceeds returned to plaintiff in time to be applied to the payment of the original notes.
The witness further testified that on the day the notes were discounted by the defendant, or the day-after, the publishing company notified the plaintiff of the fact and turned over to plaintiff in Chicago, four thousand sets of the publication called “Our Island Possessions,” being of value sufficient to cover the amount of the notes in controversy, as security for the claim of plaintiff for the proceeds of the notes in controversy here, which proceeds plaintiff was entitled to receive from the publishing company, but did not receive. That plaintiff had been buying these books from the publishing company from a period commencing about January 1, 1902, and that it continued to purchase them up to about the end of December, 1902, covering a period of approximately one year. That in December, 1902, a settlement was had between plaintiff and the publishing company covering their book purchases up to that time. That in this settlement the publishing company was given credit for all the “Island” books which had been delivered to plaintiff, including the four thousand sets delivered on October 7th, or 8th, 1902, as security. That the publishing company was charged with the full amount of the proceeds of the notes in controversy here, and that plaintiff gave to the publishing company a note for the balance due it, and that the account between plaintiff and defendant was closed on plaintiff’s books. That Mr. N. D. Thompson was present at this settlement and consented thereto and approved of the same. That it was further agreed that whatever amount plaintiff might be able to realize out of this suit should be turned over to the publishing company and the suit should be prosecuted at the expense of the publishing company. Mr. McCormick also testified that at the time the “Island” books were delivered to plaintiff as security, which was five days prior to the institution of this suit, it was agreed be *582 tween plaintiff and the publishing company that all of the expenses of the litigation to recover the proceeds of these notes from defendant should be borne by the publishing company. That this was the agreement from the beginning. That Mr. Thompson had selected the attorneys to be employed in the matter.
The witness further testified that Judge Spencer, who appeared for the plaintiff at the trial of the cause, did not really represent the Chicago Herald Company in this litigation, although he afterwards stated that he had written a letter which was offered in evidence authorizing Judge Spencer to appear in this cause on behalf of plaintiff, provided, however, that plaintiff should be at no expense whatever for his services.
The witness also testified that the three notes discounted by W. S. Bryan were each indorsed by the said W. S. Bryan.
Plaintiff also produced N. D. Thompson as a witness who testified as to the sales of the “Island” books to the Chicago Herald Company. He testified that the business amounted to $20,000 a month. That Mr. Bryan, the defendant, was interested in'the contract with the Chicago Herald Company and was as familiar with its terms as the witness. That when the notes had been delivered to him by the Chicago Herald Company in September he had attempted to have them discounted in Chicago through brokers there. That these brokers had agreed to place the paper to the amount of $100,000, but had stated that they were unable to discount this paper, giving as a reason a monetary flurry at the time in .Wall street. That the notes were then sent to St. Louis, and that he attempted to discount them through brokers there, and also with a party in East St. Louis. That his bank had -told him that they had enough Record-Herald paper and did not want any more of it. He had therefore defaulted in Ms obligation with the plaintiff to deliver them funds on or before October 1st. with which to take up the maturing notes. He stated *583 that while matters stood this way, Mr. Bryan called upon him at his office and he explained the situation to him. That Mr. Bryan said that he could have the notes discounted at his bank. That after another ineffectual attempt by the witness to have the notes discounted himself, when Mr. Bryan called a few days later he was given the notes. Thompson says that he told defendant that he was very anxious to obtain the proceeds that day to send them to plaintiff and that Bryan agreed to give him a check for the proceeds that day if it was possible to get them through the bank. That the next he heard from Mr. Bryan was a letter from his attorney, which was offered in evidence, in which it was stated that Mr. Bryan had discounted the notes and had applied the proceeds on account of the indebtedness existing to him from the publishing company on account of the profit-sharing contract for the “Island” publication.
Plaintiff also offered in evidence the original answer filed by defendant and also the first amended answer. These answers admit the execution of the notes by plaintiff to the publishing company and that said notes were indorsed and delivered by the publishing company to defendant, and that defendant indorsed and delivered the same to the National Bank of Commerce in St. Louis. There are no other admissions in these answers further than are contained in the second amended answer, upon which the case was tried.’
There was no evidence offered to show the amount of the proceeds of the discount of the three notes in controversy.
Defendant offered in evidence the contract of date March 29, 1899, between defendant and the publishing company for the publication of the book known as ‘ ‘ Our Island Possessions.” This contract provided that the work should be written and compiled by defendant, who was also to supervise the mechanical processes of the publication of the same and see it through the press. *584 That the book was to be published and put on the market by the publishing company and that the profits arising from the sale thereof were to be divided between defendant and the publishing company in the proportion of one-third to defendant and two-thirds to the publishing company. This contract was excluded by the court on plaintiff’s objection and over defendant’s exception. Defendant proved, upon cross-examination of. N. D. Thompson, that a petition in bankruptcy had been filed against the publishing company October 9, 1902. That a proposition of compromise was gotten up between the' company and its creditors, under the witness’s supervision. That the condition of the company at the time of the trial was about the same as in October, 1902.
Defendant also offered in evidence the composition agreement between the publishing company and its creditors providing for the settlement of its indebtedness in monthly notes for fifty per cent of the face of its obligations. This was excluded on plaintiff’s objection and over defendant’s exception, as well as other testimony offered to prove the insolvency of the publishing company.
Defendant offered to prove by W. F. Ryan, an expert accountant, who had examined the books of the publishing company with reference to the amount due by it to W. S. Bryan on account of the “Islands” publication, that according to the books of the publishing company it was indebted to defendant in a sum exceeding the amount sued for in tbis case, on account of his share of the profits of the “Islands” publication. The books of the publishing company were in court and were offered in evidence in connection with this expert testimony.
This testimony was objected to by plaintiff on the ground that it was immaterial and irrelevant, as the publishing company was not a party to this cause, and because defendant had an adequate remedy against the *585 publishing company. The objection was sustained and the testimony excluded over the defendant’s exception.
Defendant asked a peremptory declaration of law, to the effect that the finding of the court must be in his favor, which was refused. Defendant also asked a declaration to the effect that as the proof showed that the plaintiff was not the real party in interest, the finding must be for defendant. Defendant also asked a declaration that if the notes had been delivered by the publishing company to defendant to be discounted in bank and that defendant had indorsed the same and became liable for the payment thereof, then the finding must be for the defendant. Also declarations to the effect that if a settlement had been made between the publishing company and plaintiff for the proceeds of the notes in controversy wherein plaintiff had received full satisfaction of the amount of said proceeds, then this was a satisfaction and discharge of plaintiff’s cause of action and that no recovery could be had. These declarations were refused over the exception of defendant.
The court rendered judgment for the plaintiff for the sum of $11,261.75, being the full amount of the face of the three notes and interest on said notes up to the time of the rendition of the judgment.
Defendant in due time filed his motion for a new trial, in which his objections and exceptions as herein-before set out were renewed, which motion being overruled, defendant excepted to the ruling, and an appeal was taken to this court.
I. At the date of the commencement of this action the plaintiff unquestionably had a cause of action against defendant for the proceeds of its notes which it had entrusted to the N. D. Thompson Publishing Company, for the purpose of having the same discounted and the proceeds forwarded to plaintiff to meet plaintiff’s notes which fell due October 1, 1902, pursuant to *586 the contract between plaintiff and the Thompson Publishing Company. The evidence leaves no doubt whatever that when defendant received the notes from the Thompson Publishing Company, he was fully cognizant of the arrangement between plaintiff and the Thompson Publishing Company as to the application of the proceeds of the notes when they should be discounted, and that defendant moreover expressly undertook and agreed with the Thompson Publishing Company to discount the notes and send or turn over the proceeds of the same, on the next day, to the Thompson Publishing Company, to be forwarded to plaintiff. He knew the Thompson Publishing Company was not the owner of the notes and would not be entitled to the proceeds. Having discounted the notes and obtained the proceeds thereof, as between him and plaintiff, defendant in these circumstances was liable directly to plaintiff for the proceeds of the notes, and when he undertook to and did apply the same to his own use, by crediting the amount on his account against the Thompson Publishing Company, he was guilty of an unlawful conversion thereof, and plaintiff had the right to elect to proceed directly against defendant for the unlawful conversion of the proceeds of the notes. That an action might also have been maintained by the plaintiff against the N. D. Thompson Publishing Company for the tort of the defendant, its agent, committed within the scope of the business entrusted to him, on the principle of respondeat superior, is also clear, even though it is obvious the publishing company was not willingly a party to the unlawful conversion.
There can be little or no doubt that the Thompson Company recognized its liability for the misfeasance of defendant, since it immediately advised plaintiff of the unlawful conduct of defendant and at once turned over four thousand sets of the “Island” books to secure the plaintiff against loss by reason of defendant’s unlawful conversion.
*587 While the plaintiff had at the commencement of this suit on October 13, 1902, a clear right of action against the defendant for the proceeds of its notes converted by him to his own nse, without right or authority, we are brought to the contention of defendant that by the subsequent conduct of plaintiff and the N. D. Thompson Company, in December, 1902, the only loss which plaintiff could possibly have sustained by the conduct of defendant, was satisfied by the N. D. Thompson Publishing Company assuming the full responsibility for the misappropriation of plaintiff’s notes and charging itself therewith in a settlement with plaintiff, and that, as plaintiff has sustained but a single injury, tó-wit, the loss of the proceeds of its notes, and this loss has been satisfied, plaintiff cannot now recover a second time for the same injury. It is settled law in this State that a release of one of tYo joint tortfeasors releases the other. [Hubbard v. Railroad, 173 Mo. l. c. 255.]
But it is insisted that the Thompson Publishing-Company and defendant were not joint tortfeasors and the above rule cannot be invoked. It may be conceded that in strict law, the Thompson Company was not a joint tortfeasor with defendant, in that it did not knowingly or willingly consent to or connive at defendant’s unlawful conversion of the proceeds, but is the rule above announced confined to joint tortfeasors in a strict sense? In other words, can plaintiff assert, as it did, a claim for satisfaction- for the loss of the proceeds of its notes from the N. D. Thompson Publishing Company, and that company acquiesce in the demand, and fully satisfy it, and after receiving this satisfaction, be heard to say that the Thompson Publishing Company was in fact not liable to it, and, therefore, a satisfaction by it of the one injury is no bar to a suit by plaintiff against defendant for the same injury? Or, what is even more pertinent in the light of the testimony, that this action is being prosecuted wholly at the *588 cost of the Thompson Publishing Company and in fact for its sole benefit, can that company be heard to say it was not liable for the proceeds of the notes but satisfied the same in full, and that plaintiff can still maintain its action for the use of the Thompson Company, for the same injury? We think the rule has been given a much more extended application and applies to torts for which an injured party has an election to sue one or more parties severally. It is clear that plaintiff assumed that the'Thompson Publishing Company was liable for defendant’s conversion of its notes and the publishing company acquiesced in this claim. In Hubbard v. Railroad, 173 Mo. l. c. 255, this court approved Leddy v. Barney, 139 Mass. 394, in which it was said: “The rule that a release of a cause of action to one of several persons liable, operates as a release to all, applies to a release given to one against whom a claim is made though he may not in fact be liable. The validity and effect of a release of a cause of action do not depend upon the validity of a cause of action.” In Brown v. Cambridge, 3 Allen (Mass.) 474, it is said: “The same doctrine applies to all joint torts and to torts for which the injured party has an election to sue one or more parties severally. Where, for example, a master is liable for the tort of his servant, a satisfaction from one discharges both, though they'cannot be sued jointly/’
The liability of the principal for his agent’s tort is not based upon any presumed authority in the agent to do the act, but upon public policy, and that it is more reasonable when one of two innocent persons must suffer from the wrongful act of a third person that the principal who has placed the agent in the position of trust and confidence should suffer than a stranger. Andrews, J., in Higgins v. Turnpike Co., 46 N. Y. l. c. 27, said: “It is sufficient to make the master responsible civiliter, if the wrongful act of the servant was committed in the business of the master, and within the *589 scope of his employment, and this although the servant, in doing it, departed from the instructions of Ms master. This rule is founded upon public policy and convenience. Every person is bound to use due care in the conduct of his business. If the business is committed to an agent or servant the obligation is not changed. . . . If he employs an incompetent or untrustworthy agent, it is his fault; and whether the injury to third persons is caused by the negligence or positive misfeasance of the agent, the Ttiayim respondeat superior applies, provided, only that the agent was acting at the time for the principal, and within the scope of the business entrusted to him. ’ ’ And this is the doctrine announced by this court in Garretzen v. Duenckel, 50 Mo. 104.
On the face of plaintiff’s petition it appears that plaintiff had delivered its three notes to the Thompson Company to discount for plaintiff and the Thompson Company entrusted the discounting to defendant. Defendant in discounting the notes was acting strictly within the scope of his authority, but in neglecting to pay over the proceeds to the Thompson Company and in converting the proceeds, defendant was guilty of an actual misfeasance, for which the Thompson Company, his principal, was liable to plaintiff, within the rule first announced. [1 Am. and Eng. Ency. Law (2 Ed.), 1151, 1152.] When the plaintiff and the Thompson Company entered into a settlement of the injury thus suffered, by the plaintiff by reason of the unlawful conversion of the proceeds of plaintiff’s notes and the Thompson Company fully satisfied plaintiff for said injury, plaintiff no longer had a cause of action for said injury against defendant, and this action could no longer be prosecuted by plaintiff against defendant for said injury.
Having reached this conclusion the question in regard to the equitable set-off or counterclaim of defendant against the Thompson Company and the accounting between the Thompson Company and the defendant *590 are not before us for adjudication at this time,, as the Thompson Company is not a party to this action and the plaintiff is in nowise interested in their adjustment.
Our conclusion is that plaintiff has received complete satisfaction of the injury it has received for the unlawful conversion of its notes by defendant and the instruction in the nature of a demurrer to the evidence, should have been sustained.
For the refusal to so declare the law, the judgment of the circuit court is reversed.
Burgess, P. J., and Fox, J., concur.