## HUNT v. ZIEGLER et al. (No. 7314.)*

(Court of Civil Appeals of Texas. San Antonio. March 25, 1925. Rehearing Denied April 15, 1925.)

**1. Appeal and error ⬅304—Appeal not considered if motion for new trial acted on after adjournment of term.**

If motion for new trial was acted on after adjournment of term, appeal cannot be considered.

**2. Evidence ⬅41—Judicial knowledge taken of beginning and duration of court term in determining whether court acted on motion for new trial during term.**

Court of Civil Appeals judicially knows that spring term of Forty-Fifth district court began April 7, 1924, and could have continued in session until July 5, and hence may presume, where transcript shows that court heard and disposed of motion for new trial on June 27, that court was in session and acted on motion at such term.

**3. Appeal and error ⬅663(1)—Trial judge's certificate, showing motion for new trial acted on during term, adopted as part of record, though not brought up before submission of cause.**

Where it appears from trial judge's certificate, brought up on motion for certiorari, and appellees do not question, that term had not been adjourned when motion for new trial was acted on, appellate court may grant writ and adopt certificate as part of record, though not brought up before submission of cause, and consider appeal on merits.

**4. Judgment ⬅631, 878(1)—Acceptance of satisfaction of judgment against one joint tort-feasor releases others.**

Acceptance of satisfaction of judgment against one of two or more joint tort-feasors releases all others, and they may plead judgment and satisfaction in another suit by same plaintiff involving same cause of action.

**5. Judgment ⬅631—Automobile driver held released from liability for death of fellow employé by satisfaction of judgment against employer.**

Automobile driver held released from liability for damages for death of fellow employé by widow's acceptance of satisfaction of judgment against employer, even if latter were only constructively or secondarily liable, and could have exacted contribution or even full indemnity from driver.

**6. Judgment ⬅631 — Judgment in amount agreed on held not subject to modification by evidence of reservation of right to pursue joint tort-feasor for further satisfaction.**

Judgment for plaintiffs in amount agreed on with defendant held not subject to impeachment, qualification, or modification by testimony, in subsequent action against joint tort-feasor, as to stipulation that satisfaction of judgment would but partially satisfy claim and reservation of right to pursue joint tort-feasor for further satisfaction.

**7. Release ⬅29(1)—Release of one tort-feasor releases all jointly or severally liable, unless contrary intent clearly appears.**

Release of one tort-feasor from all liability releases all jointly or severally liable, unless it clearly appears from terms of release that amount paid shall only partially satisfy claim, and that privilege of pursuing other tort-feasors is reserved, in which case instrument is mere covenant not to sue tort-feasor released.

**8. Release ⬅29(3)—Contention that one from which plaintiffs received money in satisfaction of judgment was not tort-feasor whose release could release another inconsistent with good conscience.**

Plaintiffs' contention, in death action, that corporation, from which they had received money in satisfaction of judgment against it was not liable to them, so as to render release available to another wrongdoer as a joint tort-feasor, is inconsistent with good conscience, and will not be aided by court.

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Action by William Ziegler, and others against Jesse R. Hunt. Judgment for plaintiffs, and defendant appeals. Reversed and rendered.

See, also, 267 S. W. 332.

Birkhead, Lang & Beckmann, Barrett & Barrett, and Hitzfeld & Lynch, all of San Antonio, for appellant.

McCollum, Burnett, Perry J. Lewis, H. C. Carter, Randolph L. Carter, and Champe G. Carter, all of San Antonio, for appellees.

SMITH, J. [1] Most of appellees' brief is taken up with objections to the consideration of the record on appeal, but these objections are deemed without sufficient merit to require discussion, except in one particular. It is recited in the caption of the transcript that the term of the court at which this cause was tried convened on April 7, 1924, and adjourned on May 31. The transcript itself shows appellant's motion for new trial was not presented or acted upon until June 27th, nearly a month subsequent to the recited date of adjournment. Of course a motion for new trial must be disposed of during the term of court at which the cause is tried; and as on the face of the record here the motion in this case was acted upon after adjournment of the term, the appeal cannot be considered, unless it is made to appear that the recitals in the caption are incorrect.

[2, 3] We judicially know that under the law the spring term of the Forty-Fifth district court began on April 7, 1924, and could have continued in session until the first Saturday in July, which in that year was the 5th day of that month. The transcript shows that the court heard and disposed of the motion for new trial on June 27, and that

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted June 3, 1925.

on that date appellant, "in open court," gave notice of appeal. So, we know that, although no other regular term had intervened, the court nevertheless was in session, and acted upon a motion for new trial of the case which was tried at the April term, and we might very well, but do not, presume that, in spite of the recitals in the caption of the transcript, the April term was still in session at the time the motion was acted on. However, it is not necessary to indulge that presumption here, for in a motion for certiorari appellant has brought up and now tenders a certificate of the trial judge, attested by his clerk, from which it appears that the term of the trial court was in session when appellant's motion for new trial was acted on, and did not adjourn until July 5. But now appellees, although not questioning the truth of the certificate or of the facts therein recited, object to its consideration, upon the sole ground that it was not brought up prior to submission of the cause. While counsel for appellant have been negligent in getting the record into this court in proper time and form, it is nevertheless clearly within the discretion of this court to consider the certificate; and where it has been conclusively, even though tardily, shown, and is not questioned by appellees, that the ground upon which the latter seek to have the record disregarded does not in fact exist, it would be inequitable for this court to invoke a pure technicality as a means of denying to a litigant his right of appeal. Accordingly, we have granted the motion for certiorari, adopted the certificate as a part of the record, and will consider the appeal on its merits.

On July 2, 1921, appellant Hunt and Ben H. Ziegler were riding in an automobile in the city of San Antonio, when their car and another collided, and Ziegler was killed in the accident. Both Ziegler and Hunt were employees of the Pittsburgh Plate Glass Company, a corporation, and at the time of the accident were on an errand in their employer's behalf. Hunt individually owned and was driving the automobile.

In August, 1922, Ziegler's widow, in her own behalf and as next friend of her two minor children, brought a suit in the Thirty-Seventh district court of Bexar county, against the Plate Glass Company alone for $60,000 damages alleged to have been occasioned to them by the death of the husband and father. It was alleged that the accident was caused by the negligent acts of Hunt in driving the car at an excessive rate of speed, failing to keep a lookout, and failing to sound a warning at a street intersection. Liability of the Plate Glass Company was predicated upon the allegation in the plaintiffs' petition that at the time of the accident "Hunt was in charge of and operating said automobile, the said Hunt then and there being an employee of the Plate Glass Company, acting within the scope of his employment." It was further alleged that:

"By reason of the premises, the plaintiff, Mrs. Agnes Ziegler, has been damaged in the sum of $30,000, and said two minor children namely, William Ziegler and B. H. Ziegler, Jr., have each sustained damages in the sum of fifteen thousand ($15,000) dollars, which sums the defendant is justly due and owing to plaintiffs, and for which amounts they sue and pray judgment against defendant. Wherefore, premises considered, plaintiffs pray that * * * they be awarded judgment against defendant for their said damages, with costs of court and general and special relief."

Subsequently, on August 16, 1922, the parties to that suit entered into an agreement, subject to the approval of the court, to settle and compromise "the cause of action herein sued on by plaintiffs" upon the basis of $11,250 to be paid the plaintiffs by the Plate Glass Company. This agreement was submitted to the court, who heard evidence thereon, and finding from that evidence that the settlement was "fair and just, and to the best interest of the minor plaintiffs," the court approved the settlement, apportioned the damages $9,250, to Mrs. Ziegler and $1,000 to each of the children, and rendered judgment accordingly. It was provided in the judgment that upon payment of the stipulated amounts the Plate Glass Company should "be and stand released and discharged from any further liability on this judgment or cause of action herein sued on by plaintiff." The full amount of the judgment and costs was promptly paid over to the plaintiffs by the Plate Glass Company, as provided in the judgment, which became final. On the same day Mrs. Ziegler executed a receipt and release to the company "from any and all liability growing out of the injury and death of" her husband. In neither the agreement to settle, judgment, nor release was there any stipulation that the amount agreed on was only partial satisfaction of the whole damages sustained by the plaintiffs, or that it was not full satisfaction of those damages; nor was there any reservation of the right or privilege of pursuing any other tort-feasor for additional damages.

Three months later, in November, 1922, Mrs. Ziegler, again for herself and her minor children, brought the instant suit in the Fifty-Seventh district court of Bexar county against Jesse R. Hunt, individually and alone, praying for damages in the sum of $60,000 and again alleging in the very language of the petition in the first suit that the accident was caused by the negligent acts of Hunt in driving the car at an excessive rate of speed, failing to keep a lookout, and failing to sound a warning at a street intersection. In their petition in the second suit the plaintiffs themselves set up the fact of the settlement of the first suit with the Plate

Glass Company, alleging in explanation thereof that:

"They were damaged far in excess of said amount of compromise, and said compromise was made by plaintiffs only because of the doubt about the liability of the Pittsburgh Plate Glass Company for the negligent acts of Jesse R. Hunt, and said compromise and judgment was not made with, nor did it affect any one other than the Pittsburgh Plate Glass Company. By reason of these facts, the damages to the plaintiffs, as above set out, have only been satisfied and paid to the extent of $1,000 to William Ziegler, $1,000 to Ben H. Ziegler, Jr., and $9,250 to Mrs. Ziegler."

To this petition the defendant, Hunt, answered by pleading the settlement, judgment, and satisfaction thereof in the first suit; that the death of Ziegler gave rise to but one cause of action, which had been asserted and sustained against the Plate Glass Company, had been adjudicated and satisfied, and could not again be asserted. To this defense the plaintiffs below replied through a supplemental petition that the first suit was solely against the Plate Glass Company upon a different cause of action from that now asserted, "involving different facts and proof"; that "the Pittsburgh Plate Glass Company was only indirectly or secondarily liable, and not jointly liable, to plaintiffs, and defended said suit on the ground (among others) that the automobile in question belonged to Jesse R. Hunt, and that the Pittsburgh Plate Glass Company did not furnish said automobile or have anything to do with said Hunt's means of transportation or any control over the operation of said automobile, and that said Hunt was not acting as the agent of said Pittsburgh Plate Glass Company in operating said automobile, and that the Pittsburgh Plate Glass Company was not liable for that reason."

The cause was transferred by consent from the Fifty-Seventh to the Forty-Fifth district court, and there tried by jury, who found for the plaintiffs in the sum of $3,750, apportioned $1,000 to Mrs. Ziegler, $1,250 to one of the children, and $1,500 to the other, in response to this question:

"Question No. 14. What amount of money, if any, would, if paid now, reasonably compensate the plaintiffs for the pecuniary loss, if any, sustained by them, in excess of the sums heretofore paid by the Pittsburgh Plate Glass Company by reason of the death of Ben H. Ziegler?"

[4, 5] It is a universal rule that where there has been a judgment against one of two or more joint tort-feasors, followed by an acceptance of satisfaction, all other tort-feasors are thereby released, and the judgment and satisfaction may be successfully pleaded by them to the maintenance of the same or another suit by the same plaintiff involving the same cause of action; and this rule is invoked by appellant in this cause.

The principle stated is conceded by appellees. They insist, however, that the principle is not applicable to this case; that it is applicable to joint tort-feasors only, and not to other wrongdoers, such as the Plate Glass Company and Hunt were in this transaction; that the former, if liable at all, was only constructively or "secondarily" so, while the latter was the active and only wrongdoer, and the Plate Glass Company could have exacted contribution, even full indemnity, of him. These contentions, if correct, do not occur to us to furnish any reason for excluding the principle stated from application to the case presented here. The distinction sought to be drawn is purely superficial; it has no effect whatever upon the essential and controlling element of identity of causes of action.

The rule is applied to joint tort-feasors because of the fundamental fact that there is but a single injury, in itself and of itself indivisible, and constituting an indivisible cause of action, for which both in law and good conscience there can be but one satisfaction; and when that satisfaction is made by one of the joint tort-feasors, or by any person (Lovejoy v. Murray, 3 Wall. 1, 18 L. Ed. 129), it has the effect of releasing all others who may be jointly, or jointly and severally liable.

So, in the case at bar, the situation is in principle precisely the same. The Glass Company, the master, if liable at all, was constructively so because of its responsibility for the act of Hunt, its servant; and if the latter was liable, he was so because of his individual responsibility for the identical act. Both were tort-feasors, and whether jointly liable or not appellees had a cause of action against them, severally, it is true, but only upon one cause of action, and it was an indivisible one. Upon that cause of action appellees might have sued both tort-feasors in the same action, and recovered a joint and several judgment against them, but the amount could not have been apportioned between them, for the very obvious reason that the cause of action was single and indivisible. Or appellees might have maintained a suit against each of the tort-feasors at the same time, and even prosecuted each to judgment, but in such case the satisfaction of one judgment would surely have had the effect of releasing the other. Here the aggrieved parties successfully prosecuted their single cause of action against one of the tort-feasors, and received and accepted satisfaction in full of the judgment. That was satisfaction for the entire injury, for the single cause of action, and although it moved from only one of the wrongdoers, no foundation remained for any claim against the other. The cause of action was extinguished. We think the authorities are as one in support of this holding. Lovejoy v. Murray, 3 Wall. 1, 18 L. Ed. 129; Railway v. Walker

(Tex. Civ. App.) 163 S. W. 1038; Blake v. Railway, 38 Tex. Civ. App. 337, 85 S. W. 430; Railway v. Darr (Tex. Civ. App.) 93 S. W. 166; Railway v. Bass (Tex. Civ. App.) 140 S. W. 860; Robertson v. Trammell, 37 Tex. Civ. App. 53, 83 S. W. 258; Hartigan v. Dickson, 81 Minn. 284, 83 N. W. 1091; Cleveland v. Bangor, 87 Me. 259, 32 A. 892, 47 Am. St., Rep. 326; State v. Electric Railways Co., 126 Md. 300, 95 A. 43, L. R. A. 1917A, 270; McCoy v. Railway, 146 Ala. 333, 40 So. 106; Herald Co. v. Bryan, 195 Mo. 574, 92 S. W. 902; Barkley v. Wilson, 87 Md. 219, 39 A. 502; Miller v. Beck, 108 Iowa, 575, 79 N. W. 344; McBride v. Scott, 132 Mich. 176, 93 N. W. 243, 61 L. R. A. 445, 102 Am. St. Rep. 416, 1 Ann. Cas. 61; Abb v. Railway, 28 Wash. 428, 68 P. 954, 58 L. R. A. 293, 92 Am. St. Rep. 864; Tompkins v. Railway, 66 Cal. 163, 4 P. 1165; Donaldson v. Carmichael, 102 Ga. 40, 29 S. E. 135; Seither v. Traction Co., 125 Pa. 397, 17 A. 338, 4 L. R. A. 54, 11 Am. St. Rep. 905; Railway v. Sullivan, 21 Colo. 302, 41 P. 501; Gilbert v. Finch, 173 N. Y. 455, 66 N. E. 133, 61 L. R. A. 807, 93 Am. St. Rep. 623.

[6] It is contended by appellees that the amount collected by them from the Glass Company was not an adequate satisfaction of their damages, and was not intended as full satisfaction thereof. But the judgment adjudicating the controversy speaks for itself. The settlement of the controversy was solemnly entered into under the eye and with the sanction of the court. We see no reason why that judgment should not be invested with all the dignity and verity of any other judgment. But appellees offered testimony designed either to impeach, qualify, or modify this judgment, and the court admitted and the jury gave controlling effect to that testimony, which was, first, that some months before the institution of the first suit one of appellees' counsel, in response to a suggestion of appellant's counsel, declined to sue several parties other than the Glass Company, including Hunt; second, that some time after the judgment was rendered in the first suit, a substitute release was prepared in which Hunt as well as the Glass Company was released, but that Mrs. Ziegler did not sign it, although it does not appear that it was presented to her for execution, or that she refused to sign it; and, third, Mrs. Ziegler testified that she "did not intend to accept this sum of money that was paid in the settlement of August 16, 1922, as a full satisfaction of all the damages I had suffered," although this intention was not communicated to any one. Appellees bring forward this evidence for the purpose, or having the effect, of reading into the judgment a stipulation that satisfaction thereof would but partially satisfy the claim upon the cause of action therein adjudicated, and a reservation therein of the privilege of pursuing

Hunt or others for further satisfaction. In the first place, the two incidents were of purely negative or no import, and were of remote application, one occurring some time before and the other some time after, and neither having direct connection with the settlement, and certainly could not serve to set aside, modify, or even explain a solemn agreement, whether by parol, in writing, or by judgment; and the secret, undisclosed intention of Mrs. Ziegler was equally futile. The plain recital in the judgment is that:

"The plaintiffs announced in open court that they had agreed to compromise and settle the cause of action herein sued on by plaintiffs; * * * that the plaintiffs are entitled to recover against the defendant, Pittsburgh Plate Glass Company, their damages by reason of the death of B. H. Ziegler and further finds that said agreement to compromise and settle the cause of action herein sued on by plaintiffs is fair and just and to the best interests of the minor plaintiffs; * * * that upon said defendant paying said sum; * * * it be and stand released and discharged from any further liability on this judgment or the cause of action herein sued on by plaintiffs."

[7] When the amount of the judgment, $11,250, was paid, Mrs. Ziegler's receipt therefor recited the "release of the Plate Glass Company from any and all liability growing out of the injury and death of" her husband. The rule is settled that a release of this nature, executed to one tort-feasor, has the effect of releasing all the tort-feasors jointly or severally liable upon the cause of action, growing out of the tort, unless it clearly appears from the very terms of the instrument that the amount paid thereunder shall only partially satisfy the claim, coupled with a reservation of the privilege of pursuing other tort-feasors; in which event the instrument does not constitute a release, but merely a covenant not to sue the tort-feasor with whom the terms have been made. Such was the case in Railway v. Darr, supra, in which Chief Justice Fly quoted with approval from Gilbert v. Finch, supra, that:

"Where the release contains no reservation it operates to discharge all joint tort-feasors; but where the instrument reserves the right to pursue the others it is not technically a release but a covenant not to sue, and they are not discharged."

And in the case of Blake v. Railway, supra, it was said:

" * * * We conclude that the compromise settlement made by appellant with the Pullman Palace Car Company, the judgment thereon, and the payment of the same, was a full and complete satisfaction of appellant's cause of action or claim for damages, and operated as a release of appellee, and is a bar to a recovery in this suit. A review of the many decisions upon the question would serve no useful purpose. The agreement made the basis of appellant's judgment, and the payment thereof,

pleaded in bar of this action, is not merely a contract or covenant not to sue, nor does the language used raise the question of only a partial satisfaction. It is expressly stipulated that appellant, by his next friend, Henry Blake, and the Pullman Palace Car Company, by its counsel, appears, and 'by way of compromise of all the matters in 'controversy in this suit between the plaintiff and the defendant, Pullman Palace Car Company, have agreed and consented, and by these presents do agree and consent * * * that judgment may be rendered in this cause in favor of the plaintiff * * * against the defendant, Pullman Palace Car Company, for the sum of fifty ($50) dollars,' etc. As shown by our conclusions of fact, judgment was ·duly entered in accordance with the terms of this agreement, and the said judgment has been fully paid off and discharged. All the authorities, as we understand them, are practically agreed that a party who has suffered an injury at the hands of joint tort-feasors 'may proceed against one or more of them, and obtain successive judgments against all, but is only entitled to satisfaction once of his damages.' Appellant availed himself of the privilege to sue both of the alleged wrongdoers in this instance, which resulted in an agreed judgment against one of them, viz., the Pullman Palace Car Company, which judgment has been paid. The phrase, 'by way of compromise of all the matters in controversy in the suit between the plaintiff and the defendant Pullman Palace Car Company,' found in the agreement upon which said judgment was rendered, clearly imports a settlement by compromise of the entire subject matter of the litigation, and the same is not qualified by the use of any language in said agreement indicating a different intention, or that the money to be paid in accordance with the terms thereof was to be accepted as only part satisfaction of appellant's damages. In the absence of such qualification, it must be presumed that the language quoted was used advisedly, and in its usual and ordinary acceptation, the legal effect of which, especially when taken in connection with the acceptance by appellant of the money paid, was a release of appellee from all liability for the wrongful act of which complaint is here made."

There was no word of reservation, limitation, or restriction in the release or judgment here in question; it had all the attributes of a complete final judgment, fully and completely disposing of the cause of action sued on, without reservation of any right or privilege of further satisfaction.

The case of Hartigan v. Dickson, supra, is in principle precisely in point, and in detail disposes of the questions raised in the instant case. There Dickson, the plaintiff, was injured through the negligent act of Hartigan, an employee of a railway company. Dickson made demand upon the railway company for damages due to a negligent 'act of Hartigan, its employee. The railway company settled the claim by paying Dickson a certain sum, and took his release. Afterwards Dickson sued Hartigan, the employee, who set up the release of the railway as a release of himself. So, it will be readily seen, that case and this one are identical in principle. The Supreme Court of Minnesota held that the release inured to the benefit of Hartigan (just as it inured in this case to the benefit of Hunt), saying:

"It is undoubtedly the rule that where an injured party has accepted satisfaction in full for an injury done to his person, from whatever source it may come, the settlement he has made is so far effected in equity and good conscience that the law will not permit him to recover again for the same injury. * * * The reason for this rule is simple and obvious. The law gives a complete remedy when the injured party has not been paid for the tort inflicted upon him, and, as between several persons who are jointly liable, courts will not apportion the damages between them. It does not follow from the fact that the liability of the railway company and the foreman were different in kind, one as employer and the other as servant, that the damage is severable or distinct. * * * Nor does it follow, either, that the question whether the railway company was or was not legally liable is determinative. There was but a single injury for which damages could be recovered, and the damages, in an action against the defendant or the railway company, each or both, would be for the whole injury, and this is the crucial test that resolves this issue. Both might be liable either jointly or severally, but it never has been held permissible to apportion the damages recoverable among those responsible therefor, or to permit, after release of one, in a trial against the other, who has not been released, a contention upon the merits of the main issue, to show that one was liable and the other not. It is sufficient that the plaintiff made claim for a real injury against the railway company, and that upon such claim it was settled, and satisfaction received. Plaintiff here is to be treated as having maintained such claim in good faith against the company for the precise injury which is the subject-matter of his subsequent action against defendant, and to have elected to receive his whole damages upon his previous settlement, with which he must be content. The law will not permit use of its processes to secure more than the just compensation to which an injured party is entitled, and it follows that plaintiff's settlement with the railway company, his acceptance of the amount paid, and his satisfaction are a release of any other person who may afterwards be charged with the responsibility for the same injury, and inure to his benefit."

[8] Appellees contend that the release given the Plate Glass Company was ineffectual as a release of Hunt, because a release of one may not inure to the benefit of a wrongdoer, unless the party actually released was himself liable, and that the Plate Glass Company was not liable in this cause. Appellees say:

"The facts not only show that the Pittsburgh Plate Glass Company was not a joint tort-feasor, but make it very doubtful whether the Glass Company was liable at all even constructively, as Hunt was using his own private automobile and soliciting orders as an independent contractor; and the Glass Company so

pleaded. It is necessary to show that the party released was liable before the release is a bar to suing others, even in cases of joint tort-feasors."

In other words, in order to avoid the force of the rule in question, appellees in effect take the position, now, that the Plate Glass Company was not liable to them at all; which, if true, means that appellees obtained $11,250 from that company, and propose to retain that amount and pursue another, whom they now contend was the only wrongdoer, for whatever additional damages they can get a jury to award them. We think the position is inconsistent with good conscience, and will not lend aid to its support.

The judgment must be reversed, and, as no apparent purpose may be served by remanding the cause, judgment will be here rendered that appellees take nothing of appellant.