**AMERICAN RIO GRANDE LAND & IRR. CO. v. LOWE. (No. 7329.)**

(Court of Civil Appeals of Texas. San Antonio. April 1, 1925. Rehearing Denied April 29, 1925.)

1. Release ⊂=⊃29(1)—Compromise with one or more joint and several tort-feasors, under which certain sum is accepted, releases all.

Compromise with one or more tort-feasors, under which certain sum is accepted, releases all jointly and severally liable.

2. Release ⊂=⊃29(1)—Full settlement with two joint tort-feasors in sale of land held full settlement with third joint tort-feasor.

Compromise agreement with two joint tort-feasors sued for fraud in sale of land, and for rescission, whereby judgment was to be entered for specified sum, and title to land vested in one defendant, *held* in legal effect a full acquittance of liability, and attempted reservation of cause of action against another wrongdoer was a nullity.

3. Release ⊂=⊃29(1)—Cancellation of clause held not to alter purpose and effect of agreement of compromise and settlement as releasing another wrongdoer.

Cancellation of clause in agreement of compromise with two of three wrongdoers *held* not to alter purpose and effect of agreement as release of other wrongdoer.

Error from District Court, Hidalgo County; L. J. Polk, Judge.

Action by Henry T. Lowe against the American Rio Grande Land & Irrigation Company and others. Judgment for plaintiff, and defendant named brings error. Reversed and remanded.

Glasscock & Leslie, of McAllen, and Gause & Kirkpatrick, of Mercedes, for plaintiff in error.

Epperson & Cameron, of Edinburg, for defendant in error.

FLY, C. J. This suit was instituted by Henry T. Lowe, defendant in error, who will for brevity be named as Lowe, against the American Rio Grande Land & Irrigation Company, Stewart Farm Mortgage Company, W. E. Stewart Land Company, Conrad H. Mann, receiver, and R. B. Creager, receiver, for a rescission of a sale of certain land, and for damages arising from the amounts paid out on said land in the sum of $13,400. There was a compromise as to all matters of difference between Lowe and the Stewart Companies and the two receivers, by which it was agreed that Lowe should have judgment against those parties for $16,448.50, and the title and possession of the land involved be divested out of Lowe and be vested in the Stewart Farm Mortgage Company. Judgment was rendered as set out in the agreement. As between the plaintiff in error, identified herein as the Irrigation Company, and others and Lowe, a judgment based on responses to five special issues submitted to a jury was rendered for $1,000 against the Irrigation Company, W. E. Stewart Land Company, and Stewart Farm Mortgage Company, against the same parties in the sum of $5,700, and against the same parties for $6,030, aggregating the sum of $12,730.

The petition of Lowe alleged that on or about July 9, 1920, the Irrigation Company was the owner of large tracts of land in Hidalgo county, being out of the Llano Grande grant, which land was divided into various parts, and the same were offered for sale to prospective purchasers by the owner and the Stewart Companies; that as a means towards the sale of such subdivisions the officers of the corporations entered into a conspiracy to defraud and swindle said purchasers who were brought in from various parts of the country, including the state of Oklahoma, by means of false and fraudulent representations as to material facts concerning said lands; that said Irrigation Company pretended to sell its parcels of land to the Stewart Companies, and said companies as the tools and agencies of the Irrigation Company, were put forward to sell and dispose of said lands; that Lowe was led to purchase by the W. E. Stewart Land Company, one of the conspirators, "by means of representations made to him, designed to convince him of the existence of a veritable paradise in Hidalgo county, to accompany said defendants on one of said land excursions into Hidalgo county, Texas; that plaintiff and his fellow excursionists were closely watched and guarded and were not permitted to interview or talk with any one save and except the hirelings and representatives of said conspirators"; that the excursionists were loaded into automobiles driven

by employés of the conspirators, and not permitted to talk to any one outside of the influence of the conspirators.

It was further alleged by Lowe that said agents of the conspirators "represented to him that all of the lands being offered for sale were of like fertility" as certain show farms exhibited to him, and "that water for irrigation purposes was available to all of said lands in any quantity and at any time desired; that each tract of said land would produce crops the first and each succeeding year of sufficient size and net value to pay at least one-half the purchase price of said land," and so on with the most extravagant and roseate accounts of the railroads that were coming and the value of truck gardening; "that no harmful insects or vermin were present in said locality to injure vegetation or animals or human beings; that the climate was mild and of even temperature, never varying but a few degrees throughout the year; that ample school facilities were available and within easy reach of every farm, and that public busses called by each morning during the scholastic year and conveyed children without charge to school." Lowe was so overwhelmed by the fanciful pictures given, although it would seem that such marvelous stories would have aroused the suspicions of any man of reasonable discretion, that he selected a tract of land, but which in some sleight-of-hand manner was changed on him and a different tract conveyed to him. It was alleged that nothing but the most alluring matters were conveyed to him, and he awoke to the fact after a bitter experience that the whole matter was a fabrication and a filmy dream. He alleged that he bought 40 acres of land, and it was conveyed to him by warranty deed executed by the Stewart Farm Mortgage Company for the sum of $13,400 of which $6,700 was paid in cash and notes given for the balance in sums maturing in 1 to 5 years. He alleged that the fraud was discovered in the early part of 1922, and he repudiated the contract, and as soon as practicable began steps to rescind the purchase of the land.

The cause of action was submitted to a jury on five issues, in response to which the jury found that the Irrigation Company entered into a conspiracy with the Stewart Companies to make sales of land by fraudulent misrepresentations of material facts; that the misrepresentations were of material facts made by the Irrigation Company or by its officers or agents to induce Lowe to purchase the land, and that he was so induced by such misrepresentations, and that Lowe had instituted the suit in a reasonable time after discovery of the fraud of the conspirators. While the cause was pending, and two days before the trial, the following agreement was made and entered into by and between Henry T. Lowe, defendant in

error herein, and the Stewart Farm Mortgage Company and W. E. Stewart Land Company and their receivers:

"Now come the plaintiff, Henry T. Lowe, and the defendants Stewart Farm Mortgage Company, W. E. Stewart Land Company, Conrad H. Mann, receiver, and R. B. Creager, receiver, in the above styled and numbered cause, and announce to the court that all matters and issues in controversy in this cause as between said plaintiff and said defendants have been amicably adjusted, compromised, and settled on the terms hereinafter stipulated; and, in consideration thereof and pursuant thereto it is hereby agreed by and between said plaintiff and said defendants that all matters and issues heretofore in controversy between them be adjudicated by the court in this cause as hereinafter set forth, and not otherwise; and this honorable court is hereby requested to approve said compromise agreement and enter its judgment, and decree in accordance therewith as follows:

"(1) It is agreed that it be ordered, adjudged, and decreed by the court that the plaintiff, Henry T. Lowe, have and recover of and from the defendants, Stewart Farm Mortgage Company and W. E. Stewart Land Company, jointly and severally, the sum of sixteen thousand four hundred forty-eight and fifty cents ($16,448.50) together with interest thereon from date of judgment until paid at the rate of six (6) per cent. per annum, together with all costs in this behalf incurred up to the 16th day of June, 1924.

"(2) It is agreed that it be further ordered, adjudged, and decreed by the court that the defendant Stewart Farm Mortgage Company have and recover of and from the plaintiff, Henry T. Lowe, the title and possession of the land and premises involved in this cause, being all that certain tract or parcel of land situated in Hidalgo county, Texas, known and described as farm tract 2359 in block 49 of the said North Capisallo district subdivision on the Llano Grande grant of land; and that all the right, title, interest, and estate of the plaintiff, Henry T. Lowe, in and to said tract of land be divested out of him and vested in said defendant Stewart Farm Mortgage Company; that it shall be ordered by the court that all necessary writs of possession and other necessary writs issue against said plaintiff to enforce said judgment and decree.

"(3) It is agreed that it be further ordered, adjudged, and decreed by the court that no execution or other writs or process issue on said judgment as against said defendants Stewart Farm Mortgage Company and W. E. Stewart Land Company, or either of them, or their properties or assets, but that said judgment be certified to the United States District Court for the Southern District of Texas, Houston Division, for consideration and allowance by said court in the due administration of the estate of said defendants now in receivership in said federal court.

"It is understood by the parties hereto that the plaintiff is seeking in this cause to recover judgment against the defendant American Rio Grande Land & Irrigation Company, and, in the event such recovery is obtained, the judgment hereinbefore agreed upon shall be rendered against the defendants Stewart Farm Mortgage

Company, W. E. Stewart Land Company, and American Rio Grande Land & Irrigation Company jointly and severally, to the extent of the amount of the money judgment obtained by plaintiff against said American Rio Grande Land & Irrigation Company (but in no event an amount greater than that specified in paragraph No. 1 hereof), and the balance of the judgment hereinbefore agreed upon (if any balance remains) shall be rendered against the defendants Stewart Farm Mortgage Company and W. E. Stewart Land Company, jointly and severally."

That agreement was copied into and made the basis for a judgment against the Stewart Companies and their receivers, and following that a judgment was entered against the Irrigation Company and the Stewart Companies for a different and less sum than that rendered under the agreement herein set forth. The judgment is unique and unprecedented in its characteristics.

It is provided in the agreement and entered into the judgment that the title and possession be divested out of Lowe and invested in the Stewart Farm Mortgage Company and it was agreed "that all matters and issues heretofore in controversy between them be adjudicated by the court." It was a complete settlement between Lowe and the Stewart Companies of all matters involved in the suit. It was a settlement of a complaint founded on a tort between the complaining party and two of the joint tort-feasors, while the third party was not admitted to the agreement, but was held for the judgment afterwards obtained against it.

[1] This is a suit for damages arising from fraud by which Lowe was induced to enter into a contract to purchase certain land. The fraud was charged against three parties acting in pursuance of a conspiracy to defraud the plaintiff, Lowe. The fraud in this case is connected with the contract of purchase only as it enabled the tort-feasors to defraud Lowe, the purchaser. The rescission of the contract was an incident to, grew out of, and was based upon proof of, fraud, which was a tort. The action of Lowe was based directly upon a tort, and under his allegations the three corporations were coconspirators and joint tort-feasors. As between the wronged or defrauded party and the tort-feasors, there can be but one satisfaction of a claim based on a certain tort, and when a compromise is made with one or more of the tort-feasors whereby a certain sum is accepted, the compromise has the effect of releasing all who may be jointly and severally liable. This proposition is clearly stated, exhaustively considered, and fortified by numerous decisions in the case of Hunt v. Ziegler, rendered by this court, speaking through Associate Justice Edward W. Smith, 271 S. W. 936. The authorities cited in that opinion are from Texas and 13 other states, as well as the Supreme Court of the United States, and impregnably sustain the proposition that the tort was not severable, and settlement with one tort-feasor was a settlement with all of them. There was but one injury, and there could be but one satisfaction of the damages arising from the injury, whether the satisfaction was reached through the act of one or all of the tort-feasors.

[2] The facts of the instant case present even a stronger ground, if possible, for the application of the rule than in the case of Hunt v. Ziegler, because in this case the recovery is based upon an allegation that the Irrigation Company really owned the land and not the Stewart Companies, and yet an agreement was made by Lowe, which was carried into execution in the judgment, that the title should be divested out of Lowe and invested in one of the Stewart Companies. It would be inequitable and unjust to permit that agreement to stand, and, in addition, permit a judgment against the Irrigation Company for a large sum of money. Lowe has, however, made that agreement, and should be compelled to abide by it. He had disposed of the land and made it impossible for him to restore it under his prayer for rescission, and he has, by settling with the Stewart Companies and restoring the land to them, adopted the theory of the Irrigation Company that it did not engage in the sale of the land and was not a party to any conspiracy. There can be no doubt that if the Irrigation Company is liable, it is as a joint tort-feasor with the Stewart Companies; and a full-settlement with the latter was a full settlement with the former. The judgment that "all issues of law and facts as between the plaintiff, Henry T. Lowe, and the said defendants Stewart Farm Mortgage Company, W. E. Stewart Land Company, Conrad H. Mann, receiver, and R. B. Creager, receiver, having been compromised, settled and adjusted" in accordance with the stipulations of the agreement, settled the whole case. The parties to that agreement sought to make its stipulations the basis of a judgment against the Irrigation Company, for it is stipulated that, if a judgment is recovered against the Irrigation Company, the same judgment shall be rendered against the Stewart Companies, if not in excess of the agreed judgment against them. Proceeding on the theory that the Irrigation Company was a coconspirator, if not the archconspirator, with the Stewart Companies, it is solemnly decreed that the whole of the property shall go back to the Stewart Companies, and the Irrigation Company be made the scapegoat for the whole affair. This would be palpably inequitable and unjust.

Lowe entered into a new contract with the Stewart Companies, thereby destroying the former cause of action, and the attempted or implied reservation of a cause of action

against the other wrongdoer was null and void. He could not release a part of them and hold the others liable. It was a full acquittance of the former liability, and was a new contract.

The statement of facts is quite voluminous, containing 935 typewritten pages, and we have not deemed it our duty to read all of the statement of facts. We take the statement of the evidence as made in the brief for the defendant in error, Henry T. Lowe, as presenting the strongest phase of the evidence for him, and we find that it does not satisfactorily show that the plaintiff in error, the Irrigation Company, had entered into a conspiracy to defraud Lowe, or that it was a party to the false representations, if any, made by the Stewart Companies to Lowe. We are unwilling to sustain a judgment against plaintiff in error on the testimony relied upon by defendant in error. It is hard to conceive that intelligent Americans could have been deceived by such rose colored reports of the resources of the country, as alleged, and be led to shut their eyes to the fact that the lost Garden of Eden has not yet been discovered by mankind. Utopia is still a dream and Paradise a vision, as any reasonable creature should know. It may be true that free Americans will submit themselves to the shackles of land corporations and land agents to such an extent as to be prevented from making inquiries of others as to a land into which they are contemplating moving, and with hampered and fettered minds and bodies will enter into contracts which they afterwards seek to invalidate. It would seem, after becoming dissatisfied with purchases made by him, and after an experience for months, and after consideration of the matter of the fraudulent representations for more than a year, the defendant in error succeeded in casting off the duress under which he labored, and entered a court of justice and boldly proclaimed that the veil had been removed from his eyes and that he had discovered fraud and conspiracy which he intended to lay bare before the world. We are not satisfied that he has connected plaintiff in error with the fraud perpetrated upon him.

The facts in the case of American Rio Grande Land & Irrigation Co. v. Barker (Tex. Civ. App.) 268 S. W. 506, are easily differentiated from the facts in this case. In that case Barker paid for and improved land which he had been led by the appellant to purchase, and after such inducement to buy the tract and after a portion of the purchase money had been paid to appellant, the latter claimed the land and refused to convey it to appellee. Fraud was established beyond a doubt. That case cannot form a precedent for other fact cases, unless the facts are very similar and tend to lead to the same conclusion. The facts are very different in this case from those in the Barker Case.

[3] The court, at the instance of the defendant in error and the Stewart Companies, struck out the third clause of the solemn agreement made by them. It was claimed that it was entered in the agreement by mutual mistake, but it seems to have been an effort to remove the effect of the agreement of compromise so far as it might release plaintiff in error; in fact that is ingenuously admitted in the motion to strike out the clause, and as a reply to an answer of plaintiff in error claiming its release by reason of the compromise. It seems at that time the Stewart Companies and Lowe were making common cause against plaintiff in error. It was too late, however, to destroy or weaken the effect of the agreement. The third clause clearly showed the intention of the parties, and cancellation of it did not alter the purpose and effect of the agreement.

The judgment is reversed and the cause remanded.