### BLACKWELL et al. v. SHIP CHANNEL DEVELOPMENT CO.
#### (No. 1118.)

(Court of Civil Appeals of Texas. Beaumont. June 16, 1924. Rehearing Denied June 25, 1924.)

**1. Conspiracy ⬳19—Evidence held insufficient to warrant finding that defendants consented, or encouraged another to make slanderous statements.**

Evidence *held* wholly insufficient to warrant finding that defendants consented, advised, encouraged, or in any manner conspired with real estate agent, employed by them, to slander plaintiff.

**2. Appeal and error ⬳1001(1)—Verdicts not permitted to rest upon mere surmises.**

Verdicts are not permitted to rest upon mere surmises or suspicions.

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. Brokers ⬦➡106—Consent to another's slanderous remarks may be proved by circumstances.**

Consent or encouragement by principal to one employed as real estate agent to make slanderous statements and remarks may be proved by circumstances, as well as by direct or positive evidence.

**4. Principal and agent ⬦➡159(1)—Rule as to liability of principal for slanderous remarks of agent stated.**

A principal is not liable for all slanderous statements and representations of his servant or agent, being liable only for wrongful acts within scope of his employment and in furtherance of master's or principal's business.

**5. Principal and agent ⬦➡159(1)—Relationship between defendants and one uttering slander held not one of agency, so as to render defendants liable.**

An alleged agent, employed by defendants to sell lands, and to appoint his own subagents and perform his duties in an energetic and businesslike manner, *held* not authorized to utter slander against competitor of defendants so as to render latter liable therefor; relation being more nearly that of independent contractor than principal and agent.

**6. Release ⬦➡29(1)—One defendant held not released by agreement that no judgment should be taken against codefendant.**

In action against defendants and one employed by them as real estate agent, for slander, defendants were not released from liability by agreement of plaintiff with such agent that no money judgment should be taken against him.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Suit by the Ship Channel Development Company against F. M. Blackwell and others. Judgment for plaintiff, and named defendant and another appeal. Reversed and remanded in part, and affirmed in part.

Moody, Boyles, Walker & Scott, of Houston, for appellants.

J. S. Bracewell and Stevens & Stevens, all of Houston, for appellee.

HIGHTOWER, C. J. This suit was filed by the Ship Channel Development Company, a private corporation, as plaintiff, against F. M. Blackwell, A. O. Blackwell, and P. C. Roberts, as the defendants, the plaintiff seeking to recover damages claimed to have been sustained in consequence of slanderous statements and utterances made by the defendants relating to and concerning the plaintiff corporation and its titles to certain lands, and concerning the honesty, integrity, and business ability of plaintiff's officers, its financial standing, its solvency, and business methods, etc. It was not alleged that either of the Blackwells was guilty of uttering any of the slanderous statements complained of, but it was alleged that such statements were made and uttered by the defendant Roberts, who was the employé and agent of defendants Blackwell, and that he acted within the scope of his general employment and agency in uttering such slander, and that therefore the defendants Blackwell were responsible and liable for such slander. The plaintiff further alleged that defendants Blackwell advised, counseled, procured, and conspired with Roberts to utter such slanderous statements concerning it and its officers, and that, pursuant to such conspiracy and agreement between said defendants, the said Roberts, as a real estate agent in the employ and service of the Blackwells, did utter such slanderous statements and make false representations, and that in doing so he was acting in the furtherance of the business of his principals and employers, and that therefore defendants Blackwell were liable therefor. It was further alleged by the plaintiff that such conduct and tortious acts on the part of Roberts were adopted, acquiesced in, and ratified by the defendants Blackwell, and that they were therefore liable to plaintiff for all damages sustained in consequence of such conduct on the part of defendant Roberts. The prayer was for both actual and exemplary damages, and for an injunction enjoining and prohibiting the defendants from indulging in such conduct in the future, etc.

All defendants answered, but, in view of the fact that defendant Roberts is not a party to this appeal, it is unnecessary to further notice his answer. Defendants Blackwell answered by general demurrer and general denial, and further answered specially that they had placed in Roberts' hands certain real property to be sold by him as a real estate agent on commission, and that they had no right to control him as to the manner or mode in which or means by which he was to effect sales of such property for said defendants, with the exception that it was provided in the contract between themselves and Roberts that he would conduct sales of their property in an energetic and businesslike manner, and they specially denied that any slanderous statements made by Roberts, as complained of by the plaintiff, were made within the scope of his employment with said defendants, as their servant or employé, or within the scope of his authority as agent in the sale of said property for defendants, and specially denied that they authorized any such statements or conduct on the part of Roberts, or that they even knew that he was indulging in such conduct, and that they never consented thereto or acquiesced therein, or in any manner ratified or adopted such conduct on his part. Said defendants Blackwell further answered briefly that plaintiff had released them from liability for the reason that it had settled its claimed cause of action

with the defendant Roberts, their alleged joint tort-feasor.

Plaintiff filed a supplemental petition, containing a general demurrer and general and special denials of the facts alleged in the answer of the Blackwells. This is enough of the pleadings of the parties to render intelligible what we shall say in the disposition of this case.

The case was tried with a jury, and was submitted upon special issues, in answer to which, as far as necessary to state here, the jury found, in substance, that the defendant Roberts was guilty of uttering the slanderous and false representations charged in the plaintiff's petition, and further, that the defendants Blackwell advised, encouraged, and procured Roberts to utter such slander. Upon the verdict of the jury as returned, judgment was rendered and entered in favor of the plaintiff for $1,000 actual damages, and further enjoining defendants from the repetition of such slander in the future. From this judgment the Blackwells alone have appealed.

The main and principal assignment of error is, in substance, that the evidence was wholly insufficient to warrant the finding by the jury that appellants advised, encouraged, and counseled the defendant Roberts to make the slanderous statements complained of by the plaintiff. It is contended by appellee, on the contrary, that the evidence was sufficient to sustain such finding by the jury, and therefore it is necessary that we state at some length the substance of the evidence which the appellee claims sustains this finding of the jury.

We shall not undertake to quote the witnesses on this point, but will state, in substance, the evidence as we find it in the record. The appellee, Ship Channel Development Company, is, as we have stated, a private corporation, and is authorized to own, improve, and sell land which it owns near Houston, at a place called Pasadena. In 1920, the appellee had cut up into lots and blocks this tract of land, and was selling it out to purchasers of small means for a small payment down, usually $10, and the balance to be paid in monthly installments until the whole of the purchase money was paid, and then appellee would make to the purchaser a deed of conveyance. Prior to June 9, 1920, but for how long the record does not show, the defendant Roberts, as a real estate agent, was acting for appellee in the sale of its property to purchasers, as we have stated, and made quite a number of sales of appellee's property under written contracts to small purchasers, taking a small payment of cash at the time of such contract of sale, and providing in the contract with the purchaser that the remainder of the consideration was to be paid in monthly payments, etc., as we have stated. On June 29, 1920. Roberts severed his connection with appellee because of

a falling out or disagreement with its president, Mr. Walter H. Meyers, and never thereafter had any connection with appellee.

The record shows that the appellants in this case also were the owners of a tract of land at and near Pasadena, called the Rosedale subdivision, and this property of appellants had been cut up into lots and blocks and was for sale on the market to small purchasers in that vicinity, there being quite a number of them because of the fact that a large refinery was located there, and on June 29, 1920, the defendant Roberts entered into a written contract with appellants under the terms of which he was to have the exclusive right and privilege, as a real estate agent, for a certain length of time, to sell appellants' property to small purchasers around Pasadena, under similar contracts to those by which he had theretofore sold property for the appellee. In order that there may be no misunderstanding of the terms of this written contract of agency between the appellants Blackwell and defendant Roberts, it might be well to here let our opinion show the contract in full.

"The State of Texas, County of Harris.

"This agreement, made and entered into this 29th day of June, 1920, by and between F. M. Blackwell of Jefferson county, Texas, party of the first part, and P. C. Roberts of Harris county, Texas, party of the second part, witnesseth, as follows:

"Whereas, the said Blackwell is the owner of lot No. four (4) of Block No. (34) thirty-four, and lot No. nine (9), in block thirty-five (35), of the town of Pasadena, and has platted said lot No. 4 into lots and blocks for the purpose of selling the same as subdivision, and

"Whereas, the said P. C. Roberts desires to undertake the marketing of the same at retail,

"Now therefore it is agreed:

"That party of the first part constitutes party of the second part his exclusive agent to market the same so long as the covenants and agreements of the party of the second part as herein set out are kept and performed.

"The party of the second part undertakes and agrees to organize a selling force of agents, who shall devote their exclusive time and attention to the selling of these properties, and he himself to give his personal attention and all necessary time to successfully conduct such sale.

"He agrees further, that at least ten (10) lots shall be sold previous to August 1, 1920, and at least fifty lots shall be sold previous to November 1, 1920. The prices of all lots shall be fixed by the party of the first part on consulting with party of the second part, and may be changed from time to time as agreed.

"The terms of sale may be made of ten dollars ($10.00) down on each lot, with monthly payments of $10.00 per month on the same. Party of the second part hereto, or his agent, shall have authority to receipt for the first payment and all subsequent payments shall be made to the Pasadena State Bank, at Pasadena, Texas.

"Party of the second part is to receive as his full compensation for himself and agents, in

selling said lots and for all other services hereunder an amount equal to twenty-five (25%) per cent. of the sales made and shall, in addition to selling, give the necessary time to see that all collections are made and subsequent payments paid into said 'Pasadena State Bank and do all other things necessary to be done in conducting the selling and collecting part of the enterprise, but this shall not be construed to include keeping the record and accounts of sales, which shall be kept by party of the first part.

"The commission shall be paid as follows: Party of the second part shall receive all of the first payment and fifty per cent. (50%) of such subsequent payment until his total commission of 25% on each sale shall have been received.

"Party of the first part shall furnish the necessary blueprints of the plat and such other advertising maps and such advertising circulars as may be agreed necessary from time to time.

"This contract shall continue and be in full force and effect until November 1, 1920, and if the number of lots have been sold required by this agreement at that time, shall be continued for a period of one year from date hereof.

"While it is the intention at present, to market only lot 4, in block 34, it is further agreed that if such schedule of sales shall have been successfully made by party of the second part up to November 1st, and it is decided then, or at any later time within one year from date hereof, to plat and place on the market lot No. nine (9), block thirty-five (35), consisting of twenty (20) acres, then this contract shall apply to the subdivision made from said lot No. 9.

"It is agreed that the party of the second part shall conduct such sales in an energetic and businesslike manner; shall furnish to the office of party of the first part copies of all receipts and first payments made with the preliminary contract therefor, that correct accounts might be made of the sales, it being understood and agreed that in consideration of the exclusive agency given, he is to devote his time, and the time of his agents to the sale of the property herein mentioned to the exclusion of other subdivisions and properties.

"If the sales should not be made in number of lots to the amount as above set out of the several periods, then this contract, at the option of the party of the first part, shall be of no further force or effect, but party of the first part, shall, in such event, account for and pay over all commissions on lots theretofore sold. And in case of death of the party of the second part before earned commissions on lots sold have been paid in, such commissions when paid shall be turned over to the heirs or assigns of party of the second part.

"It is further agreed that in case of default of purchase under contract whereby such contracts shall be forfeited, then no commission shall be paid except as to the payments made previous to such forfeiture.

"Party of the first part shall furnish party of the second part a statement of all collections made and paid in each month on or before the tenth day of each succeeding month, together with check covering such commissions.

"In witness whereof 'the parties hereto have hereunto set their hands in duplicate, on the day and year first above written. F. M. Blackwell, Party of the First Part, by A. O. Blackwell, Attorney in Fact. P. C. Roberts, Party of the Second Part."

Shortly after entering into this contract with appellants, Roberts commenced actively selling property for appellants, as contemplated by the contract, and the evidence in this case shows without contradiction that Roberts, shortly after his connection with appellants under the contract, commenced the course of conduct which resulted in this suit by appellee. He, on a number of occasions, stated to persons in the vicinity of Pasadena that appellee's company was not financially responsible, that it was practically insolvent, that its land titles were defective, that its officers were crooked, and made and uttered such slanderous statements, in substance, as is complained of in appellee's petition. It was further shown that Roberts, on several occasions, induced persons who had contracted to purchase appellee's property, and who had made small payments thereon, to break their contracts with appellee, and some of them afterwards purchased property belonging to appellants, through Roberts as the salesman, under the written contract as we have shown it. The record further shows that about the 1st of September, 1920, appellee, either through its president, Mr. Meyers, or its secretary, Mr. J. S. Bracewell, called attention of Mr. A. O. Blackwell to the fact that Roberts was pursuing the course which resulted in this suit, and complained to Mr. Blackwell that such conduct was injuring appellee, and sought to have Roberts desist from such conduct. There is some conflict as to whether this first complaint was made by Mr. Meyers or Mr. Bracewell, but as we consider it it is immaterial.

The evidence further shows in this connection that Mr. Blackwell, upon being informed of Roberts' conduct, appeared to be surprised and stated to appellee's representative that he did not approve such conduct on the part of Mr. Roberts, and that appellants were not seeking to sell their property by means of that sort, and that he would see Mr. Roberts as soon as he could and try to stop such conduct on his part. At this point, there is a further conflict, to this extent: Both Mr. Meyers and Mr. Bracewell testified that Mr. Blackwell, upon being informed of Roberts' conduct, stated, in substance, to them that his contract with appellants would be at an end about the 1st of October thereafter, and that he would then get rid of Mr. Roberts. Mr. A. O. Blackwell, in this connection, testified that he did not state to either Mr. Bracewell or Mr. Meyers that he would get rid of or discharge Roberts on the 1st of October or about that time, but that he did say to them that certain contingen-

cies might happen under which he would be able to get rid of Roberts, and that he would do so if he persisted in such conduct and such contingencies arose.

Mr. Bracewell testified, in substance, that he, again, about the latter part of September, 1920, complained to Mr. Blackwell that Roberts was still indulging in his slander of plaintiff and its officers and its land titles, and that Mr. Blackwell told him that he, in the meantime, had talked to Mr. Roberts about his conduct, and had told him to desist, and that Mr. Blackwell again stated to Mr. Bracewell that he would get rid of Roberts about the 1st of October. Again, on this point, Mr. Blackwell denied that he stated absolutely to Mr. Bracewell that he would get rid of Roberts by the 1st of October, but did say to him that, if the contingency arose upon which he could do so, he would get rid of Mr. Roberts about the 1st of October. On this second visit to Mr. Blackwell, Mr. Bracewell testified that Mr. Blackwell again appeared to be surprised that Mr. Roberts had continued his misconduct and again repeated, in substance, to Mr. Bracewell that such conduct on the part of Roberts did not meet with Blackwells' approval.

On October 8, 1920, a written contract was entered into between the appellants Blackwell and the defendant Roberts, which changed or modified the June contract to some extent, the change consisting in this: It was agreed in the modified contract for Blackwells to take out of Roberts' hands as real estate agent a considerable portion of the property which he was authorized to handle under the June contract, but it was agreed in the modified contract that Roberts' commission for sales of the property left in his hands by the modified contract should be increased.

It will be observed in the contract of June 29th, which we have inserted, that it was provided, in substance, that, in the event Roberts had sold certain number of lots by the 1st of November thereafter, the contract giving him the exclusive agency to sell appellants' property should be extended to the 1st of January, 1921. The proof in this case shows that the number of lots that had been sold by Roberts as exclusive real estate agent under the contract of June 29th was such as to compel the Blackwells to continue such contract to January 1, 1921, when the contract was changed.

[1-3] The foregoing states, in substance, all the material evidence bearing upon the question as to whether appellants consented, advised, or encouraged Roberts to make the slanderous statements and representations complained of by the appellee in this case. We have given the question careful consideration, and have read the entire statement of facts in the record, not being content to rely alone on excerpts found in the briefs, and we have concluded that the evidence is wholly insufficient to warrant the finding of the jury that appellants, or either of them, consented, advised, encouraged, or in any manner conspired with the defendant Roberts to slander the appellee, its officers or property. It would not be sound nor just to hold that, because the appellants were engaged in a business in which they were competitors with appellee, it might be reasonably inferred by a jury that they encouraged, counseled, or advised the defendant Roberts in his tortious and unlawful conduct. Such would only be a mere surmise or suspicion, and verdicts in this state are not permitted to rest upon such mere surmises or suspicions. Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059; Thresher Co. v. Moss (Tex. Civ. App.) 213 S. W. 690; Kirby Lumber Co. v. Boyett (Tex. Civ. App.) 221 S. W. 669; I. & G. N. Ry. Co. v. Edmundson (Tex. Com. App.) 222 S. W. 181; Thomas & Co. v. Hawthorne (Tex. Civ. App.) 245 S. W. 966; Joffre v. Mynatt (Tex. Civ. App.) 206 S. W. 951; Hill v. Staats (Tex. Civ. App.) 187 S. W. 1039; Houston v. Holmes, 262 S. W. 849, decision by this court, not yet officially reported. We are not unmindful of the rule, well settled, that an issue of the character here involved may be proved by circumstances, as well as by direct or positive evidence, but what we hold is that there is neither direct nor circumstantial evidence sufficient to warrant the jury's finding in this case that appellants conspired with Roberts in slandering the plaintiff and its officers and land titles, which is the charge upon which the judgment in this case rests, and without further discussion of the question, we sustain appellants' contention cn this point and hold that the evidence as found in this record is wholly insufficient to sustain such finding by the jury.

[4] The appellee contends, however, that the judgment in this case should be upheld, regardless of the sufficiency of the evidence to show that appellants conspired with the defendant Roberts, as charged, and advances the counter proposition that it was within the general scope of Roberts' employment under his contract with appellants to utter the slander, etc., complained of, and that therefore it is immaterial whether appellants conspired with him or not. If this counter proposition is a sound legal proposition, then, of course, it is wholly immaterial whether there was a conspiracy on the part of appellants and Roberts or not. It seems to us, however, that it would be going a long way and beyond common sense and reason to sustain this counter proposition as correct in law. It is quite easy to merely state the general rule that a master or principal is held responsible for the negligent or tortious act of his servant or agent or for the latter's

defamation of another, where the servant or agent, at the time, was acting within the general scope of his employment, and in furtherance of the master's or principal's business, but the application of the rule is sometimes attended with difficulty. The difficulty in the application of the rule always arises when it becomes necessary to determine what constitutes the "course of employment," in cases relating to master and servant, or "the scope of authority," in cases of agency. It is, of course, well-settled law in this state that an employer is liable for his employé's act, done within the scope of his general authority in furtherance of the employer's business, and to accomplish the object for which he was employed, though the particular act done by the employé was unauthorized and unlawful. I. & G. N. Ry. Co. v. Anderson, 82 Tex. 516, 17 S. W. 1039, 27 Am. St. Rep. 902; Burnett v. Oechsner, 92 Tex. 588, 50 S. W. 562, 71 Am. St. Rep. 880; I. & G. N. Ry. Co. v. Cooper, 88 Tex. 607, 32 S. W. 517. But, as we have stated, the difficulty in applying the rule is found when we attempt to ascertain whether the act or conduct on the part of the employé was within the general scope of his employment.

[5] The material inquiry in this connection is, Did Roberts bear to the appellants in this case, under his contract to sell their lands as exclusive real estate agent, such a relation as would make appellants liable to the appellee for the slander, etc., uttered by Roberts while pursuing the sales of such property for appellants, merely because of the contractual relation? In this connection, we quote from Mechem on Agency, where the author discusses the liability of the principal for the agent's torts and crimes, as follows:

"In all of the discussions of this question, it is constantly assumed, and it is always a condition precedent, that the relation of principal and agent, or master and servant, shall actually exist. That this is so seems often to be easily overlooked, and it cannot very well be unduly emphasized. * * *

"A person, either natural or artificial, is not liable for the acts of negligence of another, unless the relation of master and servant or principal and agent exists between them."

Neither is a person, natural or artificial, liable for the tort of another, unless the relation of master and servant or principal and agent exists between them.

"There can be no recovery against one charged with negligence upon the principle of respondeat superior, unless it be made to appear that the relation of master and servant in fact existed, whereby the negligent act of the servant was legally imputable to the master." 2 Mechem on Agency (1914 Ed.) § 1858.

Further quoting the same author, at section 1879:

"The utmost that can ordinarily be said is that a servant is acting within the course of his employment when he is engaged in doing, for his master, either the act consciously and specifically directed, or any act which can fairly and reasonably be deemed to be an ordinary and natural incident or attribute of that act or a natural, direct, and logical result of it. If in doing such an act the servant acts negligently, that is negligence within the course of the employment."

Can it be said in sound reason in this case that Roberts' conduct in slandering the appellee, who was a competitor of appellants here, could fairly and reasonably be deemed to be an ordinary and natural incident or attribute under his written contract to sell appellants' property as exclusive real estate agent for a given period of time, or that his conduct was a natural, direct, and logical result of the contract between Roberts and appellants? If not, then there is no liability on the part of appellants in this case for such conduct on the part of Roberts. Now what were Roberts' duties under the written contract, as we have set it out? Simply to use his best efforts and energy and business methods as an independent real estate agent to sell appellants' property upon the terms and conditions specified in the contract. The contract clearly provides that Roberts was to furnish, at his own expense and selection, the necessary subagents for carrying out his contract with appellants, and the only limitation upon his efforts and methods in carrying out the contract with appellants was that he should be energetic and perform his duties in a businesslike manner. It certainly could not be reasonably held that the performance of his duties under the contract in an energetic and businesslike manner contemplated that he should slander persons in general who, in his opinion, might be competitors of the Blackwells in the real estate business. Therefore we think that it would be wholly unreasonable to hold in this case that it was within the general scope of Roberts' employment with appellants for him to utter the slander complained of by the appellee in this case. We think, as contended by appellants, that the relation which Roberts sustained to appellants in this case under the contract between them was more nearly that of independent contractor. It is very clear from the contract and all the evidence touching it that the appellants had no control over Roberts as to the mode and manner or means by which he was to sell their property. Therefore appellants were not his master and he their servant or employé, in the legal acceptation of those terms. The master or employer, in the usual legal acceptation of those terms, has the right to direct the conduct of the servant or employé, as well as the mode and manner of doing the work, and hence his corresponding

liability for an improper execution of the work.

" 'He is deemed the master who has the supreme choice, control, and direction of the servant, and whose will the servant represents, not merely in the ultimate result of the work, but in all of its details.' * * *

"In the second relation, that of employer and independent contractor, there is no such control and direction by the employer over the servant in the details of the work.

" 'The true test * * * by which to determine whether one who renders service to another does so as a contractor or not, is to ascertain whether he renders the service in the course of an independent occupation, representing the will of his employer only as to the result of the work, and not as to the means by which it is accomplished.' "

These quotations are taken from the opinion of the Supreme Court of this state in Cunningham v. Railway Co., 51 Tex. 503, 32 Am. Rep. 632. They suffice to show, in our opinion, that the relation here sustained by Roberts to appellants was more in the nature of independent contractor than that of master and servant or the ordinary principal and agent. The Cunningham Case has been followed in this state by all the Courts of Civil Appeals and frequently by the Supreme Court since its rendition, and the soundness of the rule there stated as to the true test in determining whether one sought to be charged is a master or an independent contractor has never been questioned, and upon the facts of this case we think it clear that the test there given has application.

[6] As to appellants' contention that the appellee released it from the claimed liability by agreeing upon the trial with the defendant Roberts that no money judgment would be taken against him, but that appellee might have judgment perpetuating the temporary injunction theretofore issued against Roberts, we hold that the same is not sound, and is not sustained by any authority cited by appellants, nor by any that we have been able to find. There is no use in entering into a discussion of this question, because we are satisfied there is nothing in it.

As we have said, the evidence in this case, as found in the present record, is wholly insufficient to sustain the verdict of the jury as rendered, and, since we have overruled appellee's counter proposition that it was within the general scope of the employment and authority of Roberts to bind appellants by his unlawful conduct, it results that the judgment against appellants must be reversed. It is not made clear from the record, however, that appellee may not be able to procure evidence to establish its alleged conspiracy against appellants upon another trial, and we therefore decline to render the judgment in appellants' favor, but remand the cause for another trial as between appellee and appellants, but that part of the judgment awarding an injunction against the defendant Roberts is in all things affirmed.

Reversed and remanded in part, and affirmed in part.