**Wilma KNUTSON et vir, Petitioners,**

v.

**MORTON FOODS, INC., Respondent.**

**No. B–8540.**

Supreme Court of Texas.

July 23, 1980.

Rehearing Denied Sept. 12, 1980.

**806**

Schleider & Ewing, Richard W. Ewing, Houston, for petitioners.

Vial, Hamilton, Koch, Tubb, Knox & Stradley, Fred S. Stradley and Edwin E. Wright, III, Dallas, for respondent.

POPE, Justice.

Wilma Knutson and her husband, Lonnie, sued Jack Chastain and his wife, Dorothy, for damages arising out of an automobile collision between vehicles driven by Mrs. Knutson and Mrs. Chastain. The Knutsons also sued Morton Foods, Inc., relying on the theory of *respondeat superior.* The Knutsons settled with the Chastains for the sum of $10,000 but expressly reserved their cause of action against Morton Foods. The trial court then granted Morton Foods' motion for summary judgment that the Knutsons take nothing. The judgment was granted for two reasons: (1) the release of the Chastains operated to release Morton Foods, and (2) the undisputed evidence established that the Chastains were independent contractors. The court of civil appeals affirmed the judgment, addressing only the question concerning the effect of the Knutsons' release of the Chastains. 580 S.W.2d 876. We disagree with the holding of the court of civil appeals in this regard and hold that the unity of release rule does not apply to a settlement by an employee or agent to release his principal. We affirm the judgments of the lower courts, however, on the grounds that the undisputed evidence is that the Chastains were independent contractors.

In April, 1974, Dorothy Chastain and Wilma Knutson were in an automobile accident. At the time of the accident, Mrs. Chastain was allegedly delivering snack items for Morton Foods. The Knutsons sued the Chastains and Morton Foods, seeking recovery from Morton Foods under the theory of *respondeat superior.* The Knutsons alleged that Dorothy Chastain was acting on behalf of her husband, who was an employee of Morton Foods. The Knutsons then entered into a covenant not to sue with the Chastains upon their paying the Knutsons ten thousand dollars. The agreement specifically reserved the Knutsons' cause of action against Morton Foods, provided that the sum paid was in complete satisfaction of claims against the Chastains, and stated that the Knutsons agreed to indemnify the Chastains to the extent of $10,000 in the event Morton Foods obtained indemnity against the Chastains.[1]

■ The court of civil appeals, however, refused to enforce this agreement according to its terms. The court held that the Knutsons' release of the Chastains operated to release the alleged employer, Morton Foods, from any liability under *respondeat superior.* We hold that the unity of release rule does not apply to a case of vicarious liability under the doctrine of *respondeat superior.*

1. The relevant provisions of the covenant are:

    II.

    Plaintiffs expressly reserve their cause of action against Morton Foods, Inc., arising out of the incident described in plaintiffs' pleadings.

    III.

    This covenant does not release and is not intended to release plaintiffs' cause of action, or any part thereof, against Morton Foods, Inc., arising out of the incident described in plaintiffs' pleadings.

    IV.

    It is further understood and agreed that in the event judgment should be rendered in any suit arising out of the occurrence made the basis of this suit in favor of plaintiffs and against Morton Foods, Inc., and Morton Foods, Inc. subsequently seeks to obtain indemnity and contribution against the Chastains by way of suit against the Chastains, the plaintiffs will hold harmless and indemnify defendants Chastain and their insurer for any such judgment to the extent of the payment herein recited.

    V.

    It is specifically agreed that the sum paid to plaintiffs and their attorney is in complete and final satisfaction of any and all claims for damages, of whatsoever kind and character, which plaintiffs, or anyone claiming through them or on their behalf, may have against defendants Chastain or their insurer.

This is so whether the settlement is achieved by a covenant not to sue or a release. In *McMillen v. Klingensmith*, 467 S.W.2d 193 (Tex.1971), this court held that the release of a party named or specifically identified released that party *but no others.* 467 S.W.2d at 196 [Emphasis added]. The second paragraph of the Knutsons' release expressly reserved their cause of action against Morton Foods; the third paragraph expressly stated that the release did not extend to the action against Morton Foods. The release, therefore, factually satisfies the rule of *Klingensmith.* Our question is whether the unity of release should survive in this instance, that is, whether a settlement with and release of an employee operates to release the principal under the doctrine of *respondeat superior.*

Morton Foods advances several reasons that the release of the Chastains was a release of Morton Foods. The reasoning is that it was Chastain and not the employer who was the active tortfeasor; the action Morton Foods is derivative and not primary. This argument has its roots in an attack upon the whole *respondeat superior* doctrine. Neither this nor any other jurisdiction seems inclined to abandon the centuries-old doctrine. *Bruckner v. Fromont*, 101 Eng.Rep. 758 (1796); *Hern v. Nichols,* 91 Eng.Rep. 256 (1708); *Liability to Third Persons*, 4 VAND.L.REV. 260 (1951); PROSSER, LAW OF TORTS § 46 (4th ed. 1978); Wigmore, *Responsibility For Tortious Acts: Its History*, 7 HARV.L.REV. 315, 383, 441 (1894). The doctrine, from its inception, was based upon public policy. It is the enterprising superior who puts his employees upon the road. *Newspaper, Inc. v. Love*, 380 S.W.2d 582, 588–89 (Tex.1964). The employer who reaps the benefits of the employee's activities on the road should share the losses caused by those acts. The doctrine is a deliberate allocation of losses that are sure to occur in the conduct of the enterprise. The employer is also in a better

position to distribute the costs. PROSSER, *supra*, sec. 46.

Morton Foods also says that the release of an employee should release the employer because the payment of $10,000 by the Chastains was satisfaction of the whole claim for damages. In other words, the Knutsons have already been paid. We disagree. This argument confuses a release with the theory of satisfaction. A satisfaction must be full and complete recompense in order to bar further action. Nothing in this record indicates that the money paid by the Chastains was such a full satisfaction. *Bradshaw v. Baylor University*, 126 Tex. 99, 84 S.W.2d 703 (1935).

■ Even during the ascendancy of the "unity of release" rule, a plaintiff could separately sue an employee and his employer and recover from both of them, so long as he did not recover more than one satisfaction. *Hunt v. Zeigler*, 271 S.W. 936, 938 (Tex.Civ.App.—San Antonio 1925), *affirmed*, 280 S.W. 546 (Tex.Com.App.—1926, jdgmt. adopted). The fact that an employee has been released in a settlement has no bearing on the continued liability of the employer *unless the settlement is in full satisfaction of the plaintiff's claims against both the employee and the employer.*[2]

Morton Foods also argues that the release of the Chastains by the Knutsons will be undermined unless it operates to release the employer. Enforcement of the release, as written, will encourage a circuity of action. Morton Foods concludes that the only way to avoid a circuitous course of action is to prevent the trial of this case on its merits.

The Chastains may, as argued, be subjected to an indemnity suit by Morton Foods. It is true that the Chastains are not completely protected from all liability arising out of the accident. Moreover the Knutsons, under their agreement to indemnify the Chastains up to $10,000, may have to return that sum to the Chastains. Morton

2. This opinion should not be interpreted as permitting a plaintiff two opportunities to prove that an employee's negligence caused him injury. It is well established that where the employer's liability rests solely on *respondeat su-* *perior,* an adjudication acquitting the employee of negligence will stand as a bar to a subsequent suit against the employer. *Hammonds v. Holmes*, 559 S.W.2d 345 (Tex.1977).

Foods says, therefore, that this suit by the Knutsons, a subsequent claim for indemnity by Morton Foods against Chastain, and the Chastains' claim for indemnity up to $10,-000 against the Knutsons, presents an undesirable circuity of action and undermines the original settlement if Knutson has to give back the $10,000.

There are reasons, however, which favor a recognition of partial settlements and the application of *Klingensmith* to this case and situation. We have long recognized that encouraging settlement and compromise is in the public interest. *Gilliam v. Alford*, 69 Tex. 267, 6 S.W. 757 (1887); *Fidelity-Southern Fire Ins. Co. v. Whitman*, 422 S.W.2d 552 (Tex.Civ.App.—Houston [14th Dist.] 1967, writ ref'd n. r. e.). The instant decision will aid in the achievement of that goal. A plaintiff will be able to settle with a tortfeasor who acts for another without being fearful of losing his cause of action against the party who may be liable under *respondeat superior*. At the same time, the party who is liable under *respondeat superior* will retain complete access to the courts for a full adjudication of his liabilities and his rights to indemnification.

The Knutsons and Chastains knew about these possibilities, and they were exposed to these obligations to indemnify when they executed the release. They contracted with those possibilities in mind. Paragraph IV of the release, quoted above, fully states the rights of the parties. Only the Knutsons and the Chastains will be affected by the fact that this agreement may fail to protect the Chastains from all future liability, or may subject the Knutsons to a circuitous course of litigation resulting in the return of the $10,000 to the Chastains. Ironically, the only party that is troubled by the incompleteness, or wisdom, of this release is Morton Foods. Morton Foods, however, neither participated in the negotiation of this instrument, nor paid any consideration for its release from liability.

Morton Foods, who was not a party to the settlement agreement, is the only one who does not want to give it the force expressed in the document, but it is no more preju-

diced by the settlement than if none had been made. Morton Foods has actually been benefitted since the partial settlement made by the Chastains to the plaintiffs reduces Morton Foods' liability. We see no reason why we should be more concerned with the potential problems that the Knutsons and Chastains may encounter as a result of this settlement than they were at the time they executed the release. Accordingly, we conclude that the policies expressed in *Klingensmith* outweigh the perceived dangers in permitting parties to enter into an incomplete release, or one that may lead to a circuity of action, when the parties themselves are not disturbed by those possibilities.

In *Klingensmith* we adopted, with slight modifications, the rule that was proposed by the Alaska Supreme Court in *Young v. State*, 455 P.2d 889 (Alaska 1969). In *Alaska Airlines, Inc. v. Sweat*, 568 P.2d 916 (Alaska 1977), the Alaska Supreme Court addressed the exact question that is posed in this case; whether the rule established in *Young* and *Klingensmith*, requiring the identification of a party in a release before his liability would be extinguished, should be extended to include cases in which the non-released defendant was liable solely under the theory of *respondeat superior*. In answering the question affirmatively, as we do, that court declared:

[B]ased on our reasoning in *Young*, we would reach the same result at common law by giving effect to the obvious intent of the parties to the covenant. The policy favoring termination of litigation and encouraging settlement agreements should here prevail.

568 P.2d at 930.

We also find support for these conclusions in *Hovatter v. Shell Oil Co.*, 111 Ariz. 325, 529 P.2d 224 (1974); *Finney v. Farmers Ins. Co.*, 92 Wash.2d 748, 600 P.2d 1272 (1979). Also in accord with these views are *Frantom v. Neal*, 426 S.W.2d 268 (Tex.Civ.App. —Fort Worth 1968, writ ref'd n. r. e.); *Gomez v. City Transportation Co. of Dallas*, 262 S.W.2d 417 (Tex.Civ.App.—Dallas 1953, writ ref'd n. r. e.), and *Blackwell v. Ship*

*Channel Development Co.*, 264 S.W. 223 (Tex.Civ.App.—Beaumont 1924, writ dism'd).

We disapprove the holding in *Spradley v. McCrackin*, 505 S.W.2d 955 (Tex.Civ.App.—Tyler 1974, writ ref'd n. r. e.).

■ The trial court sustained the motion for summary judgment upon separate and independent grounds, which Morton Foods urged to the court of civil appeals as a basis for the affirmance of the judgment. This court is under the duty to look to the briefs in the court of civil appeals to determine if there is an independent basis upon which the judgment of that court should be affirmed. *City of Hutchins v. Prasifka*, 450 S.W.2d 829 (Tex.1970). In our opinion there is.

■ All of the evidence presented at the summary judgment hearing shows that Jack Chastain was an independent contractor. Attached to the motion for summary judgment is a copy of the distributor agreement between Morton Foods and Jack Chastain.[3] The agreement says that Chastain "shall operate as an independent contractor, responsible for his own employees, if any, and shall not be authorized to commit or bind Morton Foods to any contract or debt."

Both Jack and Dorothy Chastain testified by deposition. He said that he worked on a salary until he moved to Snyder in 1962. Since that time he has been an independent distributor. He sets his own daily routes to serve three counties, hires and fires his own employees, sets the employees' wages and hours, and pays them. He said that Morton Foods has no right to fire his employees or set their hours. He pays their social security taxes and the sales tax. It had been two years since anybody from Morton Foods had been to Snyder to inspect the work, and he described his relationship as that of an independent distributor.

Since beginning at Snyder, he has bought three trucks through the company, but he paid for them and carried the insurance on them. He pays for the gasoline and repairs. The accident in this suit did not involve a truck; it involved a Chevrolet van, which he bought for personal use. He said the van was in his name "with my liability." He bought the van because he has three children in the Girl Scouts and Boy Scouts and for use on family trips. His wife used it each Thursday to deliver snacks to the local schools. She had been making deliveries on the day of the accident and was returning to her home at the time of the collision. Mrs. Chastain's pay was not a fixed salary but, as he said, it was what she took out of his billfold when she needed money. The company has decals that it expects to be displayed on the trucks, but there was no decal on the van.

Jack Chastain handled billings and collections for about sixty percent of the accounts, and the large accounts were billed out of the home office and credited to Chastain's account. He paid his account with Morton Foods every ten days.

The most that can be drawn from this record concerning the right of control, either by contract or by long-standing practice, is that Morton Foods did not have the

**3.** The terms of the short agreement are:

1. Distributor shall be responsible for developing and expanding the sale of Morton Foods products in the territory assigned as his area of primary marketing responsibility.

2. Distributor shall operate as an independent contractor, responsible for his own employees, if any, and shall not be authorized to commit or bind Morton Foods to any contract or debt.

3. This agreement shall continue in force and effect until terminated by either party, with or without cause, upon the giving of seven (7) days' notice of intent to terminate.

Upon termination, distributor shall not have any rights to assigned territory or to the distribution of Morton Foods' products or to the trademarks or tradenames of Morton Foods, notwithstanding this right of termination, distributor has the right to sell the assets of his business at any time, provided that no rights to distribute the products of Morton Foods, or to the use of the trademarks or tradenames of Morton Foods may be sold to the purchaser of distributor's business.

4. This agreement cancels and replaces any prior distributorship agreement that may exist between the two of us.

right to control and did not control the details of Jack Chastain's work. *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 591 (Tex. 1964).

We hold that the summary judgment was correctly granted because Jack Chastain was an independent contractor as a matter of law. The judgments of the courts below are affirmed.

DENTON, J., writes concurring opinion in which STEAKLEY and BARROW, JJ., join.

DENTON, Justice, concurring.

I would affirm the judgment of the court of civil appeals; however, I would do so on the premise that where primary liability of an agent has been effectively released, there is no remaining basis to support the cause of action against a principal under the doctrine of *respondeat superior.*

The Knutsons sued the Chastains and Mrs. Chastain's employer, Morton Foods, to recover for injuries which Mrs. Knutson received in an automobile collision. The Knutsons settled their claim with the Chastains and executed a "Covenant Not To Sue," which was filed of record. The claim against the Chastains was dismissed with prejudice. Morton Foods then filed a motion for summary judgment claiming that the "Covenant Not To Sue" had released the Chastains, and therefore had also released Morton Foods from any derivative liability. In addition, they claimed that the Chastains were independent contractors at the time of the alleged negligence. The trial court granted the summary judgment motion and entered a take nothing judgment for the Knutsons. The court of civil appeals affirmed, holding that the primary liability of the employee Chastain had been released and as a result had extinguished the vicarious liability of the employer, Morton Foods.

The primary issues before us are whether the "Covenant Not To Sue" executed by the Chastains was a general release, and whether it served to extinguish the derivative liability of Morton Foods. In the present case, Chastain and Morton Foods are not alleged to have joint and several liability, and it is conceded by the parties that any liability of Morton Foods arises solely from the employer-employee or master-servant relationship. *See Marange v. Marshall*, 402 S.W.2d 236, 238–39 (Tex.Civ.App.—Corpus Christi 1966, writ ref'd n.r.e.)

The court of civil appeals concluded that the agreement, although captioned a "Covenant Not To Sue," was a general release of the cause of action against the employee, Chastain, which extinguished the derivative cause of action against the employer, Morton Foods. The Knutsons argue that the court of civil appeals and the trial court erred in construing the agreement as a release of their cause of action against Morton Foods. They point to the language of the agreement which states that the parties did not intend such a result, and that there is no language specifically releasing the Chastains, merely language promising not to pursue their cause of action against them. Morton Foods, however, argues that the language of general release controls, and that the agreement was in fact a release.

Therefore, the resolution of this case turns on the legal distinctions between a satisfaction, a covenant not to sue, and a release. "A satisfaction is an acceptance of full compensation for the injury; a release is a surrender of the cause of action, which may be gratuitous, or given for inadequate consideration." *W. Prosser*, Handbook of the Law of Torts, § 49 (4th ed. 1971); *McMillen v. Klingensmith*, 467 S.W.2d 193 (Tex.1971); *Bradshaw v. Baylor University*, 126 Tex. 99, 84 S.W.2d 703 (1935); *Rexroat v. Prescott*, 570 S.W.2d 457 (Tex.Civ.App.— Amarillo 1978, writ ref'd n.r.e.). A covenant not to sue is merely a promise not to pursue a claim or cause of action. *Robertson v. Trammell*, 98 Tex. 364, 83 S.W. 1098 (1904); *Prosser, supra* at 303. An agreement between the parties may encompass any or all of these concepts, and the legal effect of the agreement will be determined primarily from the parties' intentions and will not be controlled by the label which the

parties may apply. *Quebe v. Gulf, C. & S. F. Ry. Co.*, 98 Tex. 6, 81 S.W. 20 (1904); *Berry v. Guyer*, 482 S.W.2d 719 (Tex.Civ. App.—Houston [1st Dist.] 1972, writ ref'd n.r.e.); *Loy v. Kuykendall*, 347 S.W.2d 726 (Tex.Civ.App.—San Antonio 1961, writ ref'd n.r.e.). Although an agreement may contain language of covenant, and purposely avoid the term "release," the intent of the parties controls, and the legal effect of the instrument may be a general release. *Prosser, supra* at 303; *See Hodges*, Contribution and Indemnity Among Tortfeasors, 26 Tex.L.Rev. 150, 172 (1947).

In paragraph I of the "Covenant Not To Sue," the Knutsons promised that they would not prosecute their cause of action against the Chastains. Paragraphs II and III expressly reserved any cause of action that the Knutsons might have against Morton Foods. In paragraph IV, the Knutsons agreed to indemnify the Chastains up to the amount of the settlement should Morton Foods obtain indemnity from the Chastains. Of particular significance is paragraph V, in which the parties agreed that the settlement was in complete satisfaction of any claims against the Chastains.[1]

Money paid an injured party in consideration for a covenant not to sue the tort-feasor is compensation for the injuries received. *Bradshaw v. Baylor University*, 126 Tex. 99, 84 S.W.2d 703, 705 (1935). Here the parties have agreed in paragraph V that the amount of compensation paid has fully satisfied any claim for damages against the Chastains. The Knutsons have not agreed to accept payment as partial satisfaction, but have expressly agreed to be fully satisfied. In so doing, they have surrendered their claim, and have released the Chastains from any liability on the underlying cause of action.[2] When the agreement is considered as a whole, the parties clearly intended to release Chastain, but reserve their claim against the employer, Morton Foods. *See W. Prosser*, Handbook of the Law of Torts § 49 at 303 (4th ed. 1971).

Having decided that the Knutsons have released their claim against the Chastains, we reach the issue of whether Morton Foods has also been released from liability. The Knutsons point out that the agreement expressly reserved any cause of action against Morton Foods. They argue that even if the Chastains were released, under *McMillen v. Klingensmith*, 467 S.W.2d 193 (Tex.1971), the agreement does not serve to release Morton Foods. Morton Foods relies on *Spradley v. McCrackin*, 505 S.W.2d 955 (Tex.Civ.App.—Tyler 1974, writ ref'd n.r.e.) and argues that the release of the primary tort-feasor has also released their derivative liability.

In *Spradley*, the plaintiffs executed a general release of the employee, and then brought suit against the employer. The court of civil appeals held that a release of the alleged tort-feasor employee by the plaintiff had also released the employer of any derivative liability. This result followed even though the parties had not expressed an intention to release the employer. The court in *Spradley* held that the employer could not be held liable on the theory of *respondeat superior* because:

> . . . the basis of such a cause of action against the employer is dependent upon an existing valid cause of action against the [employee]. If this court should construe the release as urged by

---

1. *Id.* at 877. In Paragraph V the parties agreed:

    . . . that the sum paid to plaintiffs and their attorney is in *complete and final satisfaction* of any and all claims for damages of whatsoever kind and character, which plaintiffs, or anyone claiming through them or on their behalf, may have against defendants Chastain or their insurer. (Emphasis added).

2. This case is distinguishable from those cases in which a full and complete satisfaction of a cause of action is made by judgment or in accordance with a judicial determination. *See T. L. James and Co. v. Statham*, 558 S.W.2d 865 (1977); *Bradshaw v. Baylor University*, 126 Tex. 99, 84 S.W.2d 703 (1935); *Hunt v. Ziegler*, 271 S.W. 936 (Tex.Civ.App.—San Antonio 1925), aff'd 280 S.W. 546 (Tex.Com.App.1926, Judgment adopted). As noted in *McMillen v. Klingensmith*, 467 S.W.2d 193, 195 (Tex.1971), satisfaction of an underlying cause of action and release of a party are often confused.

appellants, this would in effect hold the release of [the employee] null and void since [the employee] would be held liable for any recovery made against the employer through right of indemnity.

*Id.* at 958.

The court in *Spradley* distinguished the holding in *McMillen v. Klingensmith*, 467 S.W.2d 193 (Tex.1971). In *McMillen*, this court adopted the rule that a release of one tort-feasor did not release other joint tort-feasors unless they were specifically identified in the release. *Id.* at 196. The tort-feasors in *McMillen* were joint tort-feasors with joint and several liability. In this case, there is but one tort-feasor, the employee, and the employer's liability is derivative. I agree with the reasoning in *Spradley*, that the *McMillen* holding is not applicable in a case involving respondeat superior. I would hold that the release of the servant-employee for his torts also releases the derivative liability of the master-employer under the theory of respondeat superior.

STEAKLEY and BARROW, JJ., join in this concurring opinion.

GARWOOD, J., writes concurring opinion.

GARWOOD, Justice, concurring.

I join in that portion of the court's opinion dealing with Chastain's status as an independent contractor. With respect to the covenant not to sue, I agree that it did not bar the Knutsons' suit against Morton Foods, but for reasons different than those stated in the court's opinion.

The sole basis on which the Knutsons asserted any liability against Morton was that under the doctrine of *respondeat superior* it was liable for the negligence of its employee, Chastain, acting in the course and scope of his employment. Accordingly, if any judgment were rendered for the Knutsons against Morton, it would be entitled to judgment for indemnity in like amount against Chastain. Upon such an indemnity judgment being rendered against Chastain, Chastain would in turn be entitled to a judgment against the Knutsons in the same amount if, but *only if*, the prior settlement between the Knutsons and Chastain could properly be regarded as an agreement that the Knutsons, in consideration of the $10,000 paid them by Chastain, would not directly or indirectly subject Chastain to further liability on account of the Knutsons' damages from the incident in question. The end result of such a circular process would leave all three parties in the same place as when the Knutson-Chastain settlement was made. To avoid circuity of action, in that situation the various cross rights of the parties would simply be "collapsed." Such a settlement between the Knutsons and Chastain would reduce the Knutsons' recovery against Morton to the extent that Morton could have a recovery over against Chastain which Chastain could in turn recoup from the Knutsons. Such was the basis of the holding of this court in *Palestine Contractors, Inc. v. Perkins*, 386 S.W.2d 764 (Tex.1964), although there contribution, rather than indemnity, was involved.

There are two requirements, then, which are essential to invoking the rule of *Palestine Contractors*. The first is that the non-settling defendant be entitled to indemnity or contribution from the settling tort-feasor. That is plainly satisfied here, for as a matter of law Morton would be entitled to full indemnity from Chastain. The second requirement is that by virtue of the settlement agreement there be an express or implied obligation on the part of the plaintiff to hold harmless the settling tort-feasor from further liability, by indemnity or contribution, on account of the plaintiff's damages from the incident in question. We held in *Palestine Contractors* that such an agreement should be implied from a covenant not to sue, even though it expressly reserved the right to proceed against third parties. I believe that holding is sound.[1] A

1. *See also, e. g., Holmstead v. Abbott G. M. Diesel, Inc.*, 493 P.2d 625 (Utah 1972); *Dickey v. Estate of Meier*, 197 N.W.2d 385 (Neb.1972). *Compare Williams v. Marionneaux*, 124 So.2d

"settling" party normally expects to "buy his peace." A purportedly full and final settlement which, without expressly so providing, results in the settling party still being indirectly liable for all or part of the very same damage claim as that "settled," is a trap for the unwary.

Nevertheless, as between themselves parties should be free to structure a settlement in any way they see fit, consistent with our general rules of contract law, the rights of third parties, and the proper functioning of our court system. If a party against whom a claim is asserted desires to make a payment in settlement pursuant to an agreement under the plain terms of which he remains exposed to liability for indemnity or contribution in respect to the same claim, there is no sufficient reason for the courts to prevent him from doing so.[2]

Here the covenant not to sue speaks directly to the question of Chastain's continued exposure to liability for indemnity or contribution, and provides that the Knutsons will hold Chastain harmless in such regard "to the extent of the payment herein recited" (the $10,000 paid by Chastain to the Knutsons for the covenant). This is the equivalent of an express provision that the Knutsons will *not* hold Chastain harmless beyond such amount, and that in such regard Chastain remains fully at risk. Accordingly, except to the extent of the $10,-000 payment, the Knutson-Chastain settlement affords no basis for diminishing the Knutsons' claim against Morton Foods. Though Morton Foods would be entitled to indemnity from Chastain, Chastain would not be entitled to any relief from the Knutsons, and there would be no circuity of action.[3]

Under the express wording of this particular covenant not to sue, where the instrument expressly provides that the settling employee remains fully at risk for further liability, by way of indemnity or contribution, for the claimant's damages in excess of the amount paid in settlement, there is no reason to hold that the covenant not to sue bars the claimant's *respondeat superior* action against the employer. The settlement does not prejudice the employer, as it can still recover full indemnity from the employee. No circuity of action arises, because the employee has no suit against the claimant to recoup his indemnity liability to his employer. Whatever harm the settling employee suffers by reason of remaining liable, in indemnity or contribution, for the claimant's damages is not the result of a "trap for the unwary" and does not constitute a frustration of the normal expectations attendant on one's "buying his peace," but is simply the result of the express provisions in the settlement agreement between the claimant and the employee. For these reasons, I agree that this particular covenant not to sue given Chastain by the Knutsons does not bar the Knutsons' suit against Morton as Chastain's employer.

However, I disagree with the court's disapproval of the result in *Spradley v. McCrackin*, 505 S.W.2d 955 (Tex.Civ.App.— Tyler 1974, writ ref'd n.r.e.). There the release by the claimant, Spradley, of the employee, Henry, was held to bar Spradley's suit based on *respondeat superior* against Henry's employer. If the employer were liable it would clearly be entitled to indemnity from Henry. Since the release in *Spradley* was unqualified, and contained no indication that it did not protect against

---

919 (La.1960), *and Caldwell v. Montgomery Ward & Company, Inc.*, 271 So.2d 363 (La.App. 1972).

**2.** We are not here concerned with the authority of the tort-feasor's liability insurer to make such a settlement on his behalf or with its duty, if any, to protect its insured in the terms of such a settlement.

**3.** Under the rule preventing double recovery for a single loss, *Bradshaw v. Baylor University*,

126 Tex. 99, 84 S.W.2d 703 (1935), any recovery by the Knutsons from Morton, and accordingly the extent of Morton's indemnity against Chastain, would be reduced by the $10,000 previously paid the Knutsons by Chastain. Thus, the hold harmless clause in the covenant not to sue is, in effect, self-executing; and there can be no occasion for a suit by Chastain against the Knutsons even for the $10,000 and even though Morton recovers indemnity against Chastain.

**814**

indemnity or contribution, it should be held to impliedly protect the released employee from claims for contribution or indemnity respecting the claimant's damages. Certainly, such an unqualified release should not afford *less* protection than the *Palestine Contractors* covenant not to sue, which expressly reserved rights against third parties.[4]

The result in *Spradley* is not inconsistent with *McMillen v. Klingensmith*, 467 S.W.2d 193 (Tex.1971). In the latter case the general release of the party to an automobile collision in which the plaintiff was injured was held not to bar the plaintiff's malpractice suit against two doctors who subsequently treated her for these injuries. Clearly, the doctor defendants would not be entitled to indemnity from the released driver, so the plaintiff's suit against the doctors could in no event be *barred* under the circuity of action theory. This court expressly reserved the question of the "impact of a release effective only as to the named original tort-feasor on the *extent* of the liability of the successive tort-feasor." *Id.*, 467 S.W.2d 193 at 197. [Emphasis added.]

It is true, of course, that *Palestine Contractors* is a joint tort-feasor case, and *Spradley* is a *respondeat superior* case. But this does not justify a holding contrary to the result in *Spradley*. The settling employee is certainly entitled to as much protection from the claimant against further liability for the same injuries as is the settling joint tort-feasor. Minimizing circuity of action is no less significant in the *respondeat superior* setting than in the joint tort-feasor case.

It is also true that Article 2212a, Texas Revised Civil Statutes Annotated, has introduced significant changes in this area, the various ramifications of many of which have yet to be fully resolved. *See, e. g., Deal v. Madison*, 576 S.W.2d 409 (Tex.Civ. App.—Dallas 1978, writ ref'd n.r.e.); Comment, *Multiple Party Litigation in Compar-*

*ative Negligence: Incomplete Resolution of Joinder and Settlement Problems*, 32 Sw. L.J. 669 (1978). For cases governed by subsection (d) of section 2 the *Palestine Contractors* doctrine seems to be inapplicable, while its underlying principles apparently continue to apply in appropriately modified form to cases under subsection (e). However this may be, in my view section 2 of Article 2212a clearly was not intended to govern the common law right of indemnity respecting liability imposed entirely vicariously. In such instances the principles of *Palestine Contractors* should be applied. *See, e. g., Craven v. Lawson*, 534 S.W.2d 653 (Tenn.1976).

Here the settlement agreement expressly provided that Chastain would not be protected against further liability in indemnity or contribution. For this reason I would hold the suit against Morton was not barred. Had not such provision been made, a different holding would be required by the principles underlying *Palestine Contractors*. I think the correct result was reached in *Spradley*, where there was no such provision.

---

4. Indeed the release in *Spradley* purported not only to release "Horace Henry" but also "all other persons, firms, and corporations," and it

contained no reservation of rights. *Id.*, 505 S.W.2d 955 at 958.