52 F.3d 322
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Issam M. SALIBA, Plaintiff-Appellant,
v.
EXXON CORPORATION; Exxon Yemen, Incorporated, Defendants-Appellees.
 No. 94-2390.
 United States Court of Appeals, Fourth Circuit.
 Submitted March 21, 1995.
Decided April 21, 1995.
 
 Appeal from the United States District Court for the Western District of Virginia, at Roanoke. James C. Turk, District Judge. (CA-90-107-R)
 Issam M. Saliba, Appellant Pro Se. Cheryl G. Ragsdale, HUNTON & WILLIAMS, Richmond, VA; Lawrence Joseph Bracken, II, HUNTON & WILLIAMS, Atlanta, GA, for Appellees.
 W.D.Va.
 AFFIRMED.
 Before HALL, MURNAGHAN, and WILKINS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 In this diversity case, Issam M. Saliba ("Saliba"), appeals pro se the district court's grant of summary judgment in his action against Exxon Corporation ("Exxon") and Exxon Yemen, Inc. ("EYI"), in which he alleged tortious interference with contract and statutory conspiracy. Because we find that Saliba's claims are barred by the doctrine of release, we affirm the judgment of the district court.
 
 
 2
 In 1985, Saliba, an attorney, was hired as in-house legal counsel by Yemen Hunt Oil Company ("YHOC"), a wholly-owned subsidiary of Hunt Oil Company ("Hunt"). At this time he entered into a confidentiality agreement with Hunt, in which he pledged to keep proprietary information confidential and to avoid economic interests and activities adverse to Hunt during the period of his employment and two years thereafter. During this time, YHOC was exploring for oil in the Marib area of Yemen pursuant to a production sharing agreement with the Yemen Arab Republic ("the Government"). Shortly after hiring Saliba, YHOC entered into a general partnership, called the Yemen Exploration and Production Company ("the Partnership"), with EYI. Under the terms of the partnership agreement, YHOC sold to EYI 49 percent of its rights to the Marib production sharing agreement.
 
 
 3
 Saliba continued to work for YHOC until he was fired in February 1987. After two letters from Saliba to Hunt protesting his termination, Hunt filed a declaratory judgment action in Texas state court in December 1987 ("the Texas litigation") to determine the rights of Hunt and Saliba vis-a-vis the termination.
 
 
 4
 Also in December, Saliba and his law firm were retained by the Yemen Minister of Oil "to assist the Ministry in various matters relating to the exploration, development and marketing of oil and gas in Yemen." By Saliba's description, those matters included "[n]egotiation of liquid propane gas ("LPG") contracts with the Yemen subsidiaries of Exxon and Hunt Oil companies," and "[a]dvising the Ministry with respect to the implementation of existing concession agreements with the Yemen subsidiaries of Exxon, Hunt, B.P., Total and Shell Oil companies." The Government's agreement with Saliba provided that he would be retained for three months at a salary of $12,000 per month, and was silent with respect to any employment beyond that period.
 
 
 5
 Upon learning of Saliba's representation of the Government, Hunt immediately objected to the arrangement, claiming that it violated the confidentiality agreement. After settlement negotiations failed, Hunt sued Saliba's law firm in the United States District Court for the Eastern District of Michigan seeking to enjoin the firm from representing the Yemen Government. In January 1988, the Michigan court ruled in Hunt's favor, issuing the injunction. Saliba immediately left the firm and started practicing by himself with the Government as his sole client. The Government allowed Saliba's contract to expire at the end of the three months without renewal.
 
 
 6
 Saliba then filed a counterclaim against Hunt in the Texas litigation for improper termination, tortious interference, and antitrust violations. In May 1990, Hunt and Saliba settled the case. The settlement agreement provided for a complete release of the Partnership from claims arising from Saliba's employment with Hunt and the Government.
 
 
 7
 In February 1990, Saliba brought this action in the Western District of Virginia against Exxon and EYI (collectively, "Exxon"), alleging tortious interference, statutory conspiracy, and antitrust violations. Essentially, Saliba alleged that Exxon conspired with Hunt to end his employment with the Government. After lengthy discovery, Exxon moved for summary judgment. The district court granted the motion, holding that the release of the Partnership also released Exxon, and, in the alternative, that Saliba had failed to present facts sufficient for a reasonable jury to find in his favor on numerous elements of his claims. Saliba noted a timely appeal.[1] This court reviews a grant of summary judgment de novo. Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co., 32 F.3d 120, 123 (4th Cir.1994). The burden rests on the nonmoving party to establish the existence of a genuine issue of material fact by presenting evidence on which a jury could reasonably find in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed.R.Civ.P. 56(c)). In determining whether this showing has been made, a court must assess the factual evidence and all inferences to be drawn therefrom in a light most favorable to the party opposing the motion. Ricketts v. Vann, 32 F.3d 71, 75 (4th Cir.1994).
 
 
 8
 The district court held that because the settlement of the Texas litigation included a release of the Partnership, Exxon was also released from any liability imposed vicariously as a result of its status as a partner. Although Saliba's counterclaim in the Texas litigation did not allege statutory conspiracy, because the merit of both actions rests upon the same facts, res judicata operates to bar that claim in addition to those actually raised in Texas if the settlement released Exxon. See James W. Moore, et al., MOORE'S FEDERAL PRACTICEp 0.410 (2d ed.1993) (a cause of action for res judicata purposes "is defined by the injury for which the claimant seeks redress and not by the legal theory on which the claimant relies").
 
 
 9
 Sitting in diversity, we apply the law of the forum state; in this case, Virginia. Sokolowski v. Flanzer, 769 F.2d 975, 977 (4th Cir.1985). The Texas settlement agreement provides that it should be construed and enforced in accordance with Texas law. Virginia choice of law rules direct that "where the parties to a contract have expressly declared that the agreement shall be construed as made with reference to the law of a particular jurisdiction, [the courts] will recognize and enforce it, applying the law of the stipulated jurisdiction." Paul Business Sys., Inc. v. Canon U.S.A., Inc., 397 S.E.2d 804, 807 (Va.1990).
 
 
 10
 Saliba contends the court should construe the agreement under Virginia law, because Exxon was not a party to the agreement. This argument assumes his conclusion: that the agreement does not affect the rights of Exxon in any manner. However, because we will not know whether the settlement releases Exxon until the settlement release is examined, Texas law applies to that inquiry.
 
 
 11
 Exxon's liability as a general partner is governed by the Texas Uniform Partnership Act, Tex.Rev.Civ. Stat. Ann. art. 6132b (West Supp.1994), which has been applied in several cases to hold that the interests of a partner are identical to that of the partnership. In Shaw v. Kennedy, Ltd., 879 S.W.2d 240, 247 (Tex. Ct.App.1994), an intermediate Texas court applied the unity of interest doctrine to hold that where the liability of a general partner derives from that of the partnership, a summary judgment rendered in favor of the partnership also extinguishes claims against the partner. In so ruling, the court relied upon a Texas Supreme Court decision barring suit by a partnership where an identical action brought by the partners had been dismissed with prejudice. Id. (citing Hammonds v. Holmes, 559 S.W.2d 345, 347 (Tex.1977)). In a third case, a trial court entered default judgment against a partnership where, in an action against the partnership, each partner filed an answer, but no answer on behalf of the partnership itself was filed. Corsicana Ready Mix v. Trinity Metroplex Div., 559 S.W.2d 423 (Tex.Civ.App.1977). The appellate court reversed, relying upon Hammonds to hold that "an answer for all of the individual partners is equivalent to an answer for the partnership." Id. at 424.
 
 
 12
 Saliba contends these precedents do not apply to a case in which it is a settlement release, not a judgment, whose preclusive effect is being judged. For this proposition, he cites Knutson v. Morton Foods, Inc., 603 S.W.2d 805 (Tex.1980), which held that a release of the primarily-liable employee did not release the vicariously-liable employer. The case did not involve a partnership, but Saliba points to a footnote distinguishing Hammonds. Id. at 807 n. 2. Contrary to Saliba's representations, this footnote merely cites Hammonds to clarify that "where the employer's liability rests solely on respondeat superior, an adjudication acquitting the employee of negligence will stand as a bar to a subsequent suit against the employer." Id. Because Knutson is not a partnership case, it cannot rebut the cases Exxon cites that show Texas partnership law follows the unity of interest doctrine.
 
 
 13
 We hold, as did the district court, that Texas would apply the unity of interest doctrine to the case of the release of a partnership. Because Texas applies the doctrine to a partnership in the context of a judgment and in the context of an answer, it would be illogical for it not to apply the doctrine in the context of a release.[2]
 
 
 14
 Saliba also assigns error to the district court's handling of several other aspects of this case. We have reviewed them carefully and have found them to be without merit.
 
 
 15
 We therefore affirm the district court's grant of summary judgment in favor of Exxon. We deny Appellant's motion for oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 Saliba does not appeal dismissal of the antitrust counts
 
 
 [2]
 Saliba argues that even if the doctrine of release shields Exxon from vicarious liability as a partner, Exxon is also directly liable for its own actions, from which the settlement cannot release it. While Saliba is correct as a matter of theory, the district court correctly held that he "has not provided one jot of evidence supporting his claim for direct liability."